## CALVIN P. AUSTIN *v.* ALONZO BIRCHARD.

### *Promissory notes.    Action.    Bank.*

One, who, at the time suit is brought, is neither the owner nor holder of a negotiable promissory note, and has no interest in it, may still maintain an action thereon in his own name for the benefit of the real owner, and with his consent, provided he produces the note on trial.

The plaintiff indorsed certain promissory notes payable to him or order, and delivered them to a third party before any action was commenced upon them: and such third party thereupon became, and up to the time of trial continued to be the holders and true owners of the notes: *Held*, nevertheless, that the plaintiff was entitled to recover upon them at the request and for the benefit of the real owners, provided he produced the notes on trial.

A provision in the charter of a bank, that no note, originally due or payable to it, should be indorsed so as to enable the indorsee to maintain an action upon it in his own name, does not apply to a note taken to an individual for the benefit of the bank, and by him indorsed and delivered to the bank, and then sued for their benefit in his own name.

ASSUMPSIT upon three promissory notes, dated Detroit, Michigan, January 6th, 1855, signed by the defendant and others, and payable to the plaintiff or order in one day after date.   Plea, the general issue, and trial by jury, at the June Term, 1858,—BENNETT, J., presiding.

On trial the plaintiff introduced in evidence the three notes declared on, and proved their execution by the defendant and the other signers, and also gave evidence tending to show that they

were taken for a debt previously due the Farmer's Bank of Orwell, from Smith Dwight & Co., who were among the signers of the notes. Each of the notes when given in evidence, bore the indorsement of the plaintiff without recourse. It further appeared that the plaintiff went to Detroit as the agent of the bank to obtain a settlement of Smith, Dwight & Co.'s debt, and obtained the notes in question, with the understanding that if the arrangement should be approved by the directors of the bank, the old debt should be discharged, and if not, that the notes should be returned to the makers ; that on the return of the plaintiff to Orwell, directly after the date of the notes and before the commencement of this suit, the directors of the bank decided to accept these notes in satisfaction of the old debt, whereupon the plaintiff indorsed them without recourse, and delivered them to the bank, and the bank then became and ever afterwards continued to be, and at the time of trial were the holders and true owners of the notes, the plaintiff having no individual interest in them.

The defendant gave in evidence the charter of the Farmer's Bank and the extension thereof. The only portion of the charter, material under the decision of the court, is the proviso to the seventeenth section, which provided "that no note originally due or payable to said corporation, shall be indorsed so as to enable the indorsee to maintain an action in his own name."

The defendant requested the court to charge the jury that the action could not be maintained in the name of the plaintiff, and the court did so instruct the jury, and directed a verdict for the defendant, to which the plaintiff excepted.

*Briggs & Nicholson* and *E. J. Phelps*, for the plaintiff.

The action may be maintained by the bank, for ther own benefit, in the name of Austin.

The notes were from their inception the property of the bank, and were made payable to Austin, as their president and agent, and for their benefit. His indorsement therefore, did not change the title, nor the right to the possession of the notes, but was made for convenience of collection merely. Such indorsements may always be stricken out, or be treated as stricken out, at the trial.

The rule is now settled beyond dispute, that for the purposes of an action on a note, the holder is always to be deemed the owner. And though it appears that he has indorsed and transferred the note for value, no proof of a re-transfer is necessary, and he may recover without striking out the subsequent indorsements; *Mottram* v. *Mills*, 1 Sandf. 37; *Dolfs* v. *Frosch*, 1 Denio 167; *Morris* v. *Badger*, 6 Cowen 445; *Dargan* v. *United States*, 3 Wheaton 173; *Lonsdale* v. *Brown*, 3 Wash. C. C. 404; *United States* v. *Burke*, 1 Paine C. C. 156; *Picquet* v. *Curtis*, 1 Sumner 478; *Cassell* v. *Dows*, 1 Blatchford C. C. 335; *Pitts* v. *Keyser*, 1 Steers (Ala.) 156; *Johnson* v. *English*, 1 Steers (Ala.) 169; *Brushley* v. *Goring*, Breese 288; *Kyle* v. *Thompson*, 2 Scammon 432; *Bowie* v. *Duvall*, 1 Gills & Johns 175; Chitty on Bills 566 (535–6); *Thaxter* v. *Moody*, 2 Fairfield; *Hackett* v. *Kendall*, 23 Vt. 277.

And although it affirmatively appears that the plaintiff is not the owner, but has indorsed the note away for value, before suit brought, the action may still be maintained in his name, for the benefit of the real party in interest; *Waggoner* v. *Colvin*, 11 Wend. 28; *Burdick* v. *Green*, 15 Johns. 247.

It is the wise policy of the commercial law, to give such paper the largest negotiability, and to permit suit upon it in the name of any honest holder, for the benefit of the real owner. And never to allow the maker to defeat such an action, by speculations as to the title of the plaintiff of record, so long as he is a party or indorsee on the paper, and sues in behalf of those in interest.

Thus the real owner and holder of a note payable to bearer, may sue in the name of a stranger, without his knowledge or consent; 11 Johns. 52; *Gage* v. *Kendall*, 15 Wend. 640. And a bank owning a note, may sue in the name of their president; *Guernsey* v. *Burns*, 25 Wend. 411. And a note payable to the president may be sued in the name of the bank; *Bank of Manchester* v. *Slason*, 13 Vt. 334; *R. & B. R. R. Co.* v. *Cole*, 24 Vt. 33. And a general indorsement will not be restricted by a subsequent special indorsement.

*Geo. F. Edmunds* and *J. Maeck*, for the defendant.

If the plaintiff ever had a title to, or operative possession of,

the notes, he passed both the *legal title* and *the possession* to the real owners of the notes, before this suit was brought, who have *ever since* retained it. This presents the simple question whether a suit can be maintained upon a negotiable promissory note in the name of one who has neither *the beneficial interest,* the *legal title,* nor the *possession* of the paper.

We submit that it would contravene first principles to uphold such an action.

The general rule is that he only who has the legal interest in a contract can sue upon it. §

And the only exception is that *sometimes* the *real owner* may sue.

The utmost extent to which the cases have gone falls far short of saving such a suit as this.

One class of cases (like *Boardman* v. *Rogers,* 17 Vt. 589, and *Hackett* v. *Kendall,* 23 Vt. 275) sustains an action in favor of a nominal plaintiff, when it appears that the note was *held by the plaintiff at the commencement of the suit,* which of course gave him the legal title, which (the note having been indorsed) rested in possession; and the only ground of defence in such a case would be that the plaintiff was committing a wrong in suing, both against the defendant and the real owners. If that was not proved the defence must fail.

Another class is where the note having been indorsed and passed by the plaintiff comes back to him in the course of business, in which of course he has *both title and possession.*

Another class is where the plaintiff, the payee, or indorser, produces the note on trial with his uncancelled indorsement, and he is not compelled to account in the first instance for the indorsement, because the possession is *prima facie evidence* of right, and because the *writing* of the indorsement on the note, without proof of *delivery* according to the indorsement, would have no effect at all. This last is rather a question of evidence than of right.

The legal title and possession of this note could not exist in the plaintiff and the bank at the same time. The promise was to pay to the plaintiff *or* his appointee (his order). The plaintiff by his indorsement named his appointee and passed to him his title, interest and possession, so that there was no longer any promise to pay the plaintiff. He, by his indorsement, chose the

Austin *v.* Birchard.

alternative of having it paid to the bank, *or the holder* (which is the effect of a blank indorsement). This left no privity between the plaintiff and the defendant. The contract, by its negotiable character (and this is all there is of negotiability), has ceased to exist between the plaintiff and defendant, and existed solely between the "holders" (the bank) and the defendant.

Unless, therefore, it be held that the holder of a negotiable note indorsed in blank, can sue it in the name of *any one*, without any delivery or other act of transfer, and therefore also can sue in the names of as many, and as many times, as he pleases (for it is no abatement of a process that another suit pends for the same cause between *other* parties), it appears plain that this action can not be maintained; 24 Conn. 333, *Dana* v. *Norris;* Byles on Bills 222 ; 8 Exch. 884, *Emmett* v. *Tottenham.*

ALDIS, J. The question in this case is, may one who is the owner and holder of a negotiable promissory note bring a suit thereon in the name of another person who at the time the suit is brought is neither the owner nor holder of the note, who has not the actual possession of the note, nor any interest in it, but who consents that his name may be used as plaintiff by the true owner and holder, and who, being such nominal plaintiff, produces the note on trial.

It is not questioned but that the real owner and holder of a note payable to bearer, may deliver the note to another for the purpose of having him bring a suit, without parting with any portion of his real, beneficial and exclusive interest in the note, and that a suit may be sustained on such note in the name of such other person. This it is said is because by the delivery, the *legal* title passes. The only practical difference between that case and the one at bar is, that the real owner must deliver the note to the person who sues before the action is commenced. It is obvious that the formality of a delivery of the note, however important it may be logically and theoretically, in order to vest a title to the note in such nominal plaintiff, is substantially and in practice but the merest ceremony. The real owner has it always in his power to sue in the name of another by complying with the form of delivery. Hence, if evils may be apprehended from holding

39

in a case like the present one, that the plaintiff may sustain the suit, no real security will be afforded against the same evils, by holding that he can not sustain it. The owner may deliver the note to another, and then such other, as a nominal plaintiff, may sue.

The question is one purely of form. The real owner gains no advantage, acquires no right, by bringing the suit in the name of another. The defendant's defence, whatever it may be, can not in any way be impaired by the substitution of a nominal for the real plaintiff.

If the defendant has no defence, it is nothing to him to whom he shall pay his negotiable note ; if he have an offset or other just matter of defence, his right to avail himself of it is not impaired. The possession of the notes by the plaintiff, and his production of them on the trial, secures the defendant from possible injury in all cases where the real owner consents to the bringing of the suit. Of course, if the possession is *mala fide,* the defendant has then the right to set up such defence, in order to protect himself from a subsequent suit.

Such considerations are proper to be regarded, for if any practical evils were likely to arise from allowing suits to be brought by such nominal plaintiffs, the practice should not be suffered to exist. If, however, none can be perceived and it becomes a mere question of form, then the court would feel justified and even required to harmonize our decision of this question with the general tenor of the decisions in other States, and with the current of authority on this subject.

The point has not been directly decided in this State, but in the case of *Hackett* v. *Kendall,* 23 Vt. 276, it was held that the holder of a note payable to bearer could sue, though proved not to be the real owner, and though no assent was given by the true owner to the bringing of the suit. It was held that the real owner, having notice subsequently and not objecting, was held to acquiesce. The general principle is thus expressed by the court : " The defendant is only allowed to raise the question as to the plaintiff's title, in order to protect himself from a subsequent suit by some one having a better title who has not acquiesced in the suit."

In a recent case in England, *Emmett* v. *Tottenham*, 8 Exch. 884, the contrary doctrine was held. It was there decided that a suit can not be sustained by one having neither interest in, nor possession of a negotiable note, who sues at the request and for the benefit of the real owner.

In this country the authorities seem to incline to the doctrine that a suit by such nominal plaintiff for the benefit of the owner may well be brought.

In *Waggoner* v. *Colvin*, 11 Wend. 28, the plaintiff sued as indorsee against the indorser, who pleaded that at the time of bringing suit, one Stilwell and two others were the true and lawful owners and possessors of the note. The court held the plea good, and say "if the suit was brought by them in the name of the plaintiff, or for their benefit, that fact should be replied, and it would be a good answer to the plea." Here there is no special plea, but the facts in that case set up in the special plea here appearing on trial under the general issue, the further fact that the plaintiff sues for the benefit of the true owner, and at his request, is admitted in the case, and upon the authority of that case is a good answer.

The same question came before the supreme court of New York, in *Gage* v, *Kendall*, 15 Wend. 640. The note was payable to William Castle, or bearer. The defendant offered to prove that at the commencement of the suit the plaintiff had no title or interest in the note, but that one Strickland was the owner and holder thereof; and that the suit was begun without the knowledge or consent of the nominal plaintiff. The evidence was rejected. The court held the suit well brought. They say, " in the case of negotiable paper a suit may be brought in the name of a person having no interest in the contract. He may sue as trustee for those who are interested. Why should the defendant give himself the trouble to investigate the plaintiff's title? He owes the money to some one. In this case he offered to show he owed it to the real owner, who had brought the suit, though in the name of another. It is not a case of *mala fide* possession. A recovery in this case in the name of the present plaintiff, might be pleaded with proper averments in bar of a new suit in favor of any other person. The defendant is not deprived of

any defence he may have against the real owner. There is no objection in principle to a suit on a promissory note in the name of a nominal plaintiff; nor is there any authority against it."

. In *Guernsey* v. *Burns & Graves*, 25 Wend. 411, a suit was brought on a note belonging to the Bank of Western New York, in the name of the plaintiff. It did not appear *when* the note was delivered to the plaintiff, but the suit was brought under a general arrangement that suits on notes belonging to the bank should be brought in his name.

· The court expressly confirm the case in the 15 Wend., and say " as between the plaintiff and the defendants, the plaintiff is in law the owner, and they are precluded from disputing it. Unless the possession is *mala fide* or may work some prejudice to them, they have no concern with that inquiry." A case in Maine is also cited to the same effect, but we have not seen it; *Thaxter* v. *Moody*, 2 Fairfield.

In Chitty on Bills, 536, in note, it is said, a suit brought in the name of the indorsee without his knowledge or consent, and he having no interest, may be sustained if he subsequently assent and he is held a trustee for the indorsee; *Man* v. *Plummer*, 3 Greenlf. 73 ; 29 Maine 437; *Lewis* v. *Hodgson*, 5 Shepley 267 ; *Backman* v. *Wilson*, 9 Met. 434. It is obvious that these cases go upon the ground that when the real owner thus sues in the name of another, such other is deemed in law to have the constructive possession of the note. These decisions certainly conflict with the case in the 8 Exch.

We are inclined to follow the decisions in New York, which we deem more consonant with analogous decisions in regard to negotiable paper in other States, and with the general current of authorities in this country, . than the decisions cited from the Exchequer Reports. ,

In this case the note was originally payable to the plaintiff, though he was never the real owner of it. He indorsed it in blank. Restored to his hands he may, on trial, cancel his own indorsement, and the note is then *prima facie* his, the same as if payable to bearer and he were the holder.

· He is really the agent to sue for the true owner. In all such cases, it is settled beyond dispute that the agent's want of interest

can not be objected. The want of interest would seem to be the most serious objection. If that is removed by supposing him a trustee for the owner, we may well presume in law that the want of actual possession is supplied by supposing the actual possession of the real owner to give a constructive possession to the agent.

Another point has been made by the defendant, that this suit falls within the prohibition of the seventeenth section of the charter of the Orwell Bank.

But as this note was originally made payable to the plaintiff, as its *legal* title vested at first in the plaintiff, and as the suit is now really brought for the benefit of the bank, and at its request, we do not regard it as coming within the provision of the statute. The provision of the statute is penal, and the suit ought to be brought strictly within its terms and meaning in order to be so defeated.

The judgment of the county court is reversed.