Henry W. Newberry and Walter C. Newberry, Executors of Oliver Newberry, v. Charles C. Trowbridge and John Owen.

*Indorser's liability — proof that note was discounted for his benefit not admissible.* — The indorser of a promissory note, for whose benefit the note is discounted, does not thereby incur any other liability than that of his indorsement; and, therefore, in an action by the assignees of a bank against the indorsers of a note, it was *held* not competent to show that a note, in renewal of which the one in suit was made, was discounted by the bank for the benefit of one of the indorsers, and that the money was paid to him.

*Held, also,* in such case, that it was not competent for the plaintiffs to show that the note, in renewal of which the one in suit was given, was purchased of the maker thereof by one of the indorsers for a sum less than its face, as such evidence could have no tendency to fix the legal liability of the indorser to pay the note.

*Receiver's sale of note — what was said to be due not evidence.* — In a suit upon a promissory note purchased at a receiver's sale, evidence by defendant, to show what was stated to be due on it at the time of such sale, is not admissible.

*Sale of note pending suit — set off.* — Where, in a suit by the assignees of a bank, against the indorsers of a promissory note past due when assigned, the note, pending suit, became the property of another, it was *held* that the suit did not thereby abate, but might be prosecuted for the benefit of such purchaser, and that the note was subject to any set off which could have been made against it in an action by the bank itself.

*Set off by defendant of individual claim after death of co-defendant.* — And where in such case, pending suit, one of the defendants died, and the survivor held a certificate signed by one of the plaintiffs as acting assignee of the bank, certifying that he had deposited a certain sum with the assignees, and that the same,

constituted a claim in his favor against the assets of the bank, it was *held* that the amount due on such certificates was proper matter of set off in favor of such defendant.

*Indorser — tender by, in depreciated bank bills — its effect.* — A tender by the indorser of a note, of the sum due thereon in depreciated bank bills, without explanation, is, in legal effect, an offer of compromise, and not of payment, and cannot operate as a waiver of notice, or an unqualified acknowledgment of liability by him.

*Indorser — part payment by, in depreciated bank bills — its effect.* — The mere fact of part payment of a promissory note by an indorser in depreciated bank bills, will not have the effect of an unconditional acknowledgment of liability to pay the whole.

*Indorser — when his knowledge of defective notice must be shown.* — Nor will proof of part payment by an indorser, in any case, have such effect, where it appears that the notice of protest was insufficient to bind him, without further showing that, at the time of such payment, the indorser had knowledge that due notice had not been given.

*Heard April* 11 *and* 12.    *Decided May* 9.

Error to Wayne Circuit.

The facts are sufficiently stated in the opinion.

*Newberry & Pond* and *G. V. N. Lothrop,* for plaintiffs in error:

1. The testimony tending to show Oliver Newberry's ownership of, and dealings in regard to a note, in payment or renewal of which the note sought to be recovered upon appears to have been given, was wholly irrelevant.

The issue was, whether the proper steps had been taken to fix the liability of Oliver Newberry and Benjamin B. Kercheval, as indorsers of the last-mentioned note; and if not, whether said Newberry and Kercheval had, by their subsequent conduct, waived any *laches* in that respect.

Being thus irrelevant and immaterial, unless it can be seen that said testimony could not by any possibility have injured the defendants, its admission was fatally erroneous. — *Underhill v. N. Y. & H. R. R. R. Co.,* 21 *Barb.,* 489 ; *Myers v. Malcolm,* 7 *Hill,* 292 ; *F. & M. Bank v. Whinfield,* 24 *Wend.,* 420 ; *Clark v. Vorce,* 19 *Wend.,* 232.

NEWBERRY v. TROWBRIDGE.

2. The seventh assignment of error is well taken. The testimony offered was admissible, as tending to show the amount due on said note.

It had already appeared that· O'Flynn, (or Mrs. O'Flynn,) was the real party in interest in this suit, and the owner and holder of said note; that he (or she,) claimed title through said Conant, into whose possession said note had come as receiver in a suit to which the plaintiffs were parties defendant, and who had sold the same to O'Flynn. Conant, whilst so in possession of said note, had authority,. and it was his duty, to receive payments thereon. His statement, or admission, therefore, made whilst he so held said note, as to the amount claimed to be due and unpaid thereon, would, as against himself and those claiming under him, be *prima facie* evidence of the extent of the· amount so due and unpaid.

3. The ninth assignment of· error is based upon the rejection of the evidence offered to establish a claim by way of set off.

The ground of the rejection of this testimony was, that there were several defendants, and that the debt proposed to be set off was not due to them all jointly. — *Subdiv.* 6 *of* §4213, *Compiled Laws.*

It· is true that the suit was originally against several defendants, but upon the death of Kercheval it ceased to be so. — §4212, §4213, *Compiled Laws.* And the notice of set off was filed by leave of Court after his death.

4. The tender made in depreciated· bank bills was a conditional offer to pay, or an offer to pay in a particular 'manner, and not having been accepted, was not evidence of a waiver of the *laches* in giving notice, or an admission of liability. — *Taylor v. Jones*, 2 *Camp.*, 106, note ; *Standage, et al., v. Creighton*, 5 *C. & P.*, 406 ; 1 *Parsons on Notes and Bills*, 600 ; *Crain v. Colwell*, 8 *Johns.*, 384 ; *Agan v. McManus*, 11 *Johns.*, 180 ;· *Sice v.*

*Cunningham,* 1 *Cow.,* 397; *Barkalow v. Johnson,* 16 *N. J.,* 397.

5. Where it affirmatively appears that legal notice was. not given, mere proof of a payment is not sufficient to constitute a waiver. Plaintiffs, in such case, are bound to go further, and to show that the payment was made with full knowledge of the *laches.* — 1 *Parsons on Bills and Notes,* 601; *Byles on Bills,* (*Sherwood,*) 237, *note p.; Trimble v. Thorne,* 16 *Johns.,* 152; *Harrs v. Allnut,* 12 *La.,* 465; *Bank v. Harper,* 12 *Rob.,* (*La.,*) 231.

6. When the legal title and actual possession of a promissory note is transferred by the plaintiff, pending a suit thereon, such suit can no longer be sustained. — *Lee v. Jilson,* 9 *Conn.,* 94; *Curtis v. Bemis,* 26 *Conn.,* 1.

*C. I. Walker* and *D. C. Holbrook,* for defendants in error:

1. Defendants offered to prove that, at the time of the receiver's . sale, the amount due on the note was *stated* to be $3,064 $\frac{36}{100}$, and that said O'Flynn bought said note with notice thereof — *i. e.,* with notice of the statement.

It will be noticed that the offer does not show who made the statement, for what purpose it was made, or whether it was true or false.

This testimony was entirely immaterial. The defendants. were not parties to that case, and if the amount stated to have been due had been overrated, they would not be estopped from showing what was the real amount due. Nor can they claim any benefit from such statement. Estoppels are mutual.

2. The defendant's claims in set off were rightly rejected.

1st. They were claims against *the bank,* not against the plaintiff.

2d. There is no pretence that they were claims against the bank at the time of the assignment, by the bank, or of the commencement of this suit.

3. There are several exceptions relating to the charge, and the refusals to charge, the jury as to the effect of the written evidence of George C. Bates, as to a tender made to the bank in full of this note, in the bills of the bank.

The Court refused to charge that such tender, or offer to pay, by Newberry, was not in law a waiver of notice of dishonor, or an acknowledgment of his liability on said note, and did charge that the evidence of Bates did not *tend* to prove that such offer was by way of compromise, or that it was intended as such by Newberry; but that, if made with a knowledge of the facts, and to the full amount of the note, it tended to prove an unqualified acknowledgment of his liability, and that they were not at liberty to consider such tender as an attempt to compromise said claim without some evidence to that effect.

We submit that both, the refusal and the charge, were right.

Compromise is "an amicable agreement between parties in controversy to settle their difficulties by mutual concessions; a mutual agreement and adjustment." — *Webster.* Tender is an adversary proceeding, made not by way of agreement and adjustment, but for the protection of the real or supposed rights of the person making it. The proceeding in this case was very clearly of the latter kind, and the testimony has not the slightest tendency to prove an attempt at negotiation or compromise.

4. The only further assignment of error, (the twelfth,) is to the charge made by the Court as to the effect to be given to the testimony of A. H. Sibley.

Sibley testified in relation to the payment of $1,245, made February 1st, 1842. He testifies that he spoke to Newberry about the payment of this note, claiming that, inasmuch as he had procured the note to be discounted,

and received the money upon it, he was bound in honor to take it up, and that he now recollected of the payment upon this note, that it was paid in Bank of Michigan, by Mr. Newberry himself, after the bank had failed.

The plaintiff failed to prove the proper service of notice on Newberry.

But it is well settled that, in such cases, the offer or promise of the endorser to pay, a distinct acknowledgment of his liability, or his making a part payment, is of itself presumptive evidence of demand and notice, and dispenses with any further evidence. — 1 *Parson on Notes and Bills*, 612–15, 623–5 ; *Tebbetts v. Dowd*, 23 *Wend.*, 379 ; *Margetson v. Aitken*, 3 *C. & P.*, 338 ; *Dixon v. Elliott*, 5 *C. & P.*, 437 ; *Croxon v. Worthen*, 5 *M. & W.*, 5 ; *Sherer v. Easton Bank*, 33 *Penn.*, 140 ; *Loose v. Loose*, 36 *Penn.*, 538.

Nor does the fact that the plaintiff attempted to prove the service of notice, and failed, make any difference. — *Jones v. O'Brien*, 26 *E. L. & Eq.*, 283 ; *Sherer v. Easton Bank*, 33 *Penn.*, 140.

There being no evidence in the case to rebut the presumption of a proper service of the notice, the Court rightfully charged the jury that, if they believed the testimony of Sibley as to such payment, then the plaintiff was entitled to such a verdict. — 1 *Parson's Notes*, 622 ; *Bank of U. S. v. Lyman*, 20 *Vt.*, 666 ; *Sherer v. Easton Bank*, 33 *Penn.*, 134.

But, even if this was a case where the notice or service thereof was clearly defective, and proved to be so, we insist that the charge was rightfully made.

It is true that, in such case, it is laid down that the facts relied upon to prove a waiver must have occurred with a knowledge of the *laches* or a defective notice. — 1 *Parsons on Notes*, 701–2.

If the notice was defective, both in form and in

the mode of service, still they were defects that must have come to the knowledge of the defendants.

The notice to Kercheval was deposited in the post office; that to Newberry, if not served personally, was also deposited in the post office. It will be presumed that these notices were received by the persons to whom directed. — 1 *Parsons on Notes,* 619, n. 626; 1 *Greenleaf's Ev.,* 340; 1 *Edwards' Phillips,* 645.

This being the case, the defect, both of form and mode of service, are, by this presumption, brought home to both of the parties. This presumption is strengthened by the lapse of time that took place between the dishonor of the note and the facts relied upon to prove that waiver, and a simple promise or acknowledgment of liability or part payment, under such circumstances, is *prima facie,* sufficient proof of waiver without any direct proof of knowledge. — 1 *Parsons on Notes,* 600–2 and 3; *Byles on Bills,* 237; *Loose v. Loose,* 36 *Penn.,* 538; *Levy v. Peters,* 9 *S. & R.,* 125; *Walker v. Laverty,* 6 *Mumf.,* 487; *Pate v. McClure,* 4 *Rand.,* 171; *Zacharie v. Kirk,* 14 *La. An.,* 433; *Curtiss v. Martin,* 20 *Ill.,* 557; *Ladd v. Kenney,* 2 *N. H.,* 340; *Cram v. Sherburne,* 14 *Me.,* 48; *Jones v. O'Brien,* 26 *L. & E.,* 283.

But, even if it was necessary to prove a knowledge of these *laches* on the part of defendants, there was ample evidence on that point to go to the jury; and taking the whole charge together, we submit that they must have understood that they were to find such knowledge.

Charges substantially like this have been sustained in *Sherer v. Easton Bank,* 33 *Penn.;* 140; *Harvey v. Troupe,* 23 *Miss.,* 538. See, also, *Zacharie v. Kirk,* 14 *La. An.,* 433; *Levy v. Peters,* ¡9 *S. & R.,* 128.

CHRISTIANCY J.:

This suit was brought in June, 1843, by the defend-

ants in error, and Robert Stewart, since deceased, (who
were assignees of the Bank of Michigan,) against Oliver
Newberry and Benjamin B. Kercheval.    The declaration
charged them as indorsers of a promissory note made
by S. T. Jamieson, dated May 13, 1837, for $3,736, pay-
able to the order of the defendants, at the Bank of
Michigan, sixty days after the date thereof.    The declara-
tion states the indorsement as having been made by the
defendants directly to the plaintiffs.

. To this declaration the defendants pleaded the general
issue, and gave a notice, which is in no way material to
the present case.

In 1853, after the death of Stewart, one of the plain-
tiffs, whose death was suggested, an amended declaration
was filed by Trowbridge and Owen, the surviving plain-
tiffs, which did not materially vary from the first, except
that it contained a count against the defendants, as joint
and several makers, and the common counts.    But neither
of these additional counts become material, as it is ad-
mitted there was no evidence applicable to them.

To this amended declaration the defendants pleaded
severally the general issue.

In this stage of the case, Kercheval died, and his
death being properly suggested, Newberry, by leave of
the Court, Sept. 18, 1855, gave notice of set off under
his plea of the general issue to the amended declaration.

The case was tried in 1855, and a judgment obtained
by the plaintiffs, which was reversed by the Supreme
Court, and a new trial ordered. — 4 Mich., 391.

Newberry, the surviving defendant, having died, the
suit was revived against his executors, the present de-
fendants, in March, 1861.

The case was afterwards twice tried, resulting in a
disagreement of the jury.

Upon the fourth trial, November, 1863, a verdict was
obtained by the plaintiffs, and judgment rendered thereon,
which is now brought to this Court by writ of error,

upon exceptions to certain rulings of the Court upon the admission and rejection of evidence, and the giving and refusing instructions to the jury.

The plaintiffs having, on the trial, given evidence tending to show the making of said note, its indorsement by said Newberry and Kercheval, and that the same had been negotiated to and received by the Bank of Michigan, at or about the time of its date, in renewal of a note then held by the bank, made by said S. T. Jamieson, payable to the order of P. B. Schemerhorn, and indorsed by said Schemerhorn, one Tetterman, and said Oliver Newberry, and which last named note had been before that time discounted by said bank for said Newberry; then sought further to show, by E. P. Hastings, that the last named note, (payable to the order of Schemerhorn,) was discounted by the bank for said Oliver Newberry, and the money paid to him, or placed to his credit; that, not being paid at maturity, the bank, at the request of Newberry, received the note in suit in renewal of the former note. This evidence was objected to by the defendants, but admitted by the Court, and exception taken; and this presents the question raised by the first and second assignments of error. It is manifest that this testimony was wholly unnecessary, and could have no legitimate tendency to alter or affect the legal rights or relations of the parties.

Whether Newberry got the note discounted for his own benefit, or he and Kercheval were mere accommodation indorsers for Jamieson, the liability of the indorsers to the bank would be the same, and the same steps by way of demand and notice would be necessary to hold them to their liability as indorsers; for, by accepting the note of Jamieson thus indorsed, the bank consented to look to their legal liability as indorsers only. No moral obligation of these indorsers, or either of them, which did not create a legal liability as indorsers, could render them

liable *on this paper*.    A valid consideration was implied
from the indorsement, and was not in dispute.    The evi-
dence could not, therefore, have been offered for this
purpose: it was useless and irrelevant for the establish-
ment of any fact bearing upon Newberry's legal liability,
and its admission erroneous as matter of law.    And as
the case comes before us upon exceptions and writ of
error, and we are not at liberty to weigh the evidence,
the error will be fatal to the judgment, unless we can
clearly see that it could not possibly have had any
tendency to mislead the jury to the prejudice of the
defendants.    We do not think, from the nature of the
case, we are authorized to say it could have had no
such tendency.    The only tendency which it could have
had was to induce in the minds of the jury a belief of
a moral obligation on the part of Newberry beyond the
obligation which was imposed by the indorsement.    And
the Court having admitted the evidence in the face of
the defendant's objection, the jury might very naturally
infer that, in the opinion of the Court, they were at
liberty to hold the defendants legally liable in this suit
upon this moral obligation.    It does not appear that the
Judge, by his charge or otherwise, said anything to the
jury calculated to counteract this inference; but, on the
contrary, the action of the Court in admitting, against
the defendant's objection, the deposition of Bates, show-
ing a purchase by Newberry of the first note of Jamieson
at a discount did much to strengthen this erroneous in-
ference in the minds of the jury.    The admission of this
last evidence, which forms the basis of the third and
fourth assignments of error, was still more clearly erro-
neous.    This was the same note which the testimony of
Hastings had been allowed to show was discounted for
Newberry, and the money paid to him, and in renewal
of which the note in suit was stated to have been
received by the Bank.    It is too clear to admit of

argument, that the legal rights and relations of Newberry and the bank would be precisely, the same in respect to both these notes, whether he purchased the first note for the full amount appearing upon its face, or gave but a single dollar for it. This testimony was not merely irrelevant, as having no legal tendency to establish Newberry's liability as indorser of the note in suit, but its natural and only tendency — when taken in connection with, the irrelevant testimony of Hastings, already alluded to — was to produce in the minds of the jury the conviction that, in the opinion of the Court, they were at liberty to hold the defendants liable in this suit, upon a supposed moral obligation of Newberry to take care of the paper, and of the note given upon its renewal, because he had purchased it at less than its face; in other words, that they were at liberty to base a verdict against the defendants upon a supposed moral obligation, outside of and beyond his legal liability as indorser — thus substantially changing his liability from that of a mere indorser to that of maker of the paper.

The grounds upon which the counsel for the defendants in error claim that the above evidence of Hastings and Bates was admissible are that, upon the evidence, there was a question whether the notice of dishonor shown to have been given to the indorsers was sufficient, and as the plaintiffs relied upon subsequent payment or acknowledgment of liability as proof that due notice had been given or waived, the evidence was admissible, as tending to show the relations of Newberry to the whole transaction, and that his obligations of a moral character would tend to show that he would, and did, acknowledge his liability, and make payment thereon. But the only relation of Newberry to the transaction, which it was competent to show, were his *legal* relations, and if the proof of the moral obligations could have the tendency to prove that he acknowledged

his liability, or made payment, we do not see why — as suggested by the counsel for the plaintiffs in error — it would not be equally competent to go into proof of Newberry's moral character, to show whether he was a conscientious man, or in the habit of recognizing merely moral obligations of this kind, or otherwise.

The fifth and sixth assignments of error are not relied upon.

We see no error in the rejection of the testimony of Conant, offered by the defendants to prove that the amount due upon the note at the time of the receiver's sale "was stated to be $3,064 $\frac{36}{100}$," as relied upon under the seventh assignment of error. The proposition does not state that the offer was to show that this statement was made by the receiver; but, waiving this, we cannot see how it would be admissible, unless offered in connection with proof of some payment made to the receiver, and for the purpose of showing such payments. The purchaser of a note at a receiver's sale would not ordinarily be bound by the receiver's calculation or statement of the amount due, but is entitled to recover whatever may be due upon it, whether it be more or less than estimated by the receiver. Here was no offer to show that anything had been paid to the receiver, and no pretence of such payments.

The eighth assignment of error is not relied upon.

The ninth error is assigned upon the rejection by the Court of two certificates signed by C. C. Trowbridge, (one of the plaintiffs,) as "acting assignee" of the bank — one dated June 13, 1844, for $139, and the other June 14, 1845, for $200 — stating that Newberry had deposited these sums with the assignees of the bank in evidence of debt against the bank, "which sum constitutes a claim in favor of himself, or order, against the assets of said bank, subject to the condition of the assignment, and drawing interest from date." The plain-

tiffs had already shown, by their own testimony, that the note on which the action was brought had been assigned by the bank, with. its other property, to all the original plaintiffs — Trowbridge, Stewart and Owen — which assignment seems to have been made about the 10th day of January, 1842, long after the note became due; and, therefore, though the note was declared upon as having been indorsed directly by Newberry and Kercheval to the plaintiffs, yet the plaintiffs having themselves shown that it was owned by the bank at maturity, and by the bank assigned to the plaintiffs, and the particular provisions of the assignment do not appear, the assignees must be regarded as standing only in the right of the bank; and the subsequent holders, apparently claiming through them, and prosecuting the suit in their names, occupy no better position, and must be bound by their acts while the paper remained in their hands. We see no reason why these certificates should not have been admitted in set off, unless it is to be found in the fact that the amounts were not due to both the original defendants jointly, but to Newberry, the survivor, alone. We do not think they could be excluded on this ground. After the death of Kercheval, and its suggestion upon the record, Newberry's liability was all that could be enforced by the suit. The cause of action, originally joint, survived against him alone, and the suit, to all practical purposes, so far became a several suit against him alone. The executors or administrators of Kercheval could not have been joined; and upon the death of Newberry, the cause of action survived only against his executors. — *Comp. L.*, §4212 and §4213.

In an action against a surviving partner, a debt which became due from himself separately, before or after the death of his partner, may be included. — 2 *T. R.*, 476; 6 *T. R.*, 582. And when a survivor is

sued for his own separate debt, he may set off a debt due him as surviving partner. — 5 *T. R.*, 493; 1 *Esp.*, 47; *Hogg's Executor's v. Ashe*, 1 *Hayw.*, 477; *Lewis v. Culbertson*, 11 *Serg. & R.*, 48; 1 *Chitty's Pl.*, (7 *Am. Ed.*,) 57 *and* 603.

The remaining errors are assigned upon the charges of the Court, and refusals to charge. The tenth, eleventh and thirteenth assignments raise substantially the same question. The charges and refusals, (to which these assignments relate,) go upon the admitted hypothesis that the notice of dishonor, (of the note,) given to Newberry was deficient both in form and the manner of service, and raise the question of the effect of a tender or offer of Newberry to pay the note in question, some years after its dishonor, in the bills of the bank, which had in the meantime failed. The evidence of Bates tended to show that, after the failure of the bank, and not far from the time of the assignment, he, as the attorney of Newberry, and in pursuance of his advice to Newberry, tendered or offered to pay to the proper officers of the bank, or the person or persons representing the bank, the full amount of the note in the bills of the bank, which was refused. There appears to have been no express declaration accompanying the offer, whether it was intended to be by way of compromise or payment. There was evidence, however, tending to show that the bills of the bank were largely at a discount — how much does not appear — and this evidence was uncontradicted. It was not denied by the defendants below, nor has it been questioned here, that if Newberry, with knowledge of the laches of the holder in giving notice, or of the defect in the notice and in its service, had unconditionally promised to pay, or tendered in payment, the amount of the note in cash, such an acknowledgment of liability would have been binding But it was insisted that an unaccepted offer to pay in

the bills of the bank after its failure, and when largely at a discount, could not, of itself, operate as a waiver of notice, or an unqualified acknowledgment of a liability to pay, but should rather be treated as an offer to compromise.

The effect of the charge of the Court, and his refusal to charge, was to instruct the jury not only that such an offer might be considered as a circumstance tending to show an intention of Newberry to acknowledge his liability, but that such an offer was, of itself, equivalent in legal effect to an unconditional offer to pay the full amount of the note in cash — which, under the circumstances, was neither more nor less than an instruction that such an offer, if found true, must be treated as an unconditional recognition of a liability to pay in cash the full amount of the note.

We have not been able to discover any principle upon which such a charge can be sustained. It does not appear what was the value of the bills offered or tendered. It may have been but one dollar on the hundred, or more or less. Newberry, without any intention of acknowledging any liability whatever, and with a determination to resist - payment if not accepted, may have chosen to pay in these bills rather than go to the expense of defending a suit, or rather than incur the displeasure of the officers of the bank, or the men who represented the bank. Had the offer been accepted, it would have been binding to the extent of the value of the bills offered; but not being accepted, it could, of itself, without reference to some particular circumstances under which, or some peculiar terms in which, it was made, have no legal effect whatever as an acknowledgment of any liability. — *Standage v. Creighton*, 5 *C. & P.*, 406; *Note to Taylor v. Jones*, 2 *Camp.*, 106; *Crain v. Colwell*, 8 *John.*, 384; *Agan v. McManus*, 11 *John.*, 180; *Sice v. Cunningham*, 1 *Cow.*, 397; *Barkalow v. Johnson*, 1 *Harrison*, 397; 1 *Parsons on Bills and Notes*, 600.

NEWBERRY *v.* TROWBRIDGE.

The Court charged that there was no evidence tending to prove that the offer of the bills, as testified to by Bates, was intended to be by way of compromise. We think the only legal effect of a naked offer of this kind, standing alone, is that of an offer of compromise, and not of payment; and if accepted, it would have operated as a compromise, by way rather of set off, or accord and satisfaction, than of payment. We do not mean to say that an offer of this kind might not be made under such special circumstances, or in such language, as might have a tendency to prove an intention to recognize a liability to pay the note; but there must be something beyond the naked offer — something from which the jury shall be satisfied that the party making the offer did, in fact, intend thereby to acknowledge his liability to pay the note in cash.

The twelfth assignment of error relates to the effect of part payment by Newberry in bills of the bank after its failure. The plaintiffs had attempted to prove notice, and had succeeded only in showing that, at the proper time for giving a notice of dishonor, a notice had been made out by the notary in the form which was *held* insufficient, in *Platt v. Drake*, 1 *Doug.*, (*Mich.*,) 296, and again in the present case, as decided in 4 *Mich.*, 391, to hold the indorser, (and having once been decided in this case, must continue to govern it, though we do not hold it to be law in other cases); and the evidence of the notary tended strongly to show that this notice, instead of being served personally upon Newberry, who resided in the city of Detroit, or left at his residence or place of business, had been inadvertently left at the post office, (a mode of service held to be insufficient in *Nevins v. The Bank of Lansingburgh*, 10 *Mich.*, 547,) and no other notice was attempted to be shown. Sibley had testified to the payment by Newberry of $1,250 in the bills of the bank after its failure, and after the as-

signment to the plaintiffs. The Court, at the request of the plaintiffs below, charged the jury that if they believed the testimony of Sibley as to the payment on the note, then the plaintiffs were entitled to recover. This was giving to the mere fact of part payment in the depreciated bills of the bank, the absolute legal effect of an unconditional recognition of a liability to pay the whole note in cash, without any reference to the question whether Newberry thereby intended to recognize such liability. Nothing was left to the jury but the single fact whether such payment had been made. This charge connot be sustained. The naked fact of part payment in the depreciated paper of the bank cannot, of itself, have any greater tendency to prove the intention of recognizing such liability than the offer to pay the whole in the same kind of paper. Both stand upon the same principle, so far as regards the acknowledgment of liability; and what we have already said upon this point, in reference to the offer to pay, is equally applicable to the payment of the part in the same kind of paper.

This might dispose of this assignment of error, but as there is to be a new trial, and there is another important ground upon which we think this point of the charge erroneous, we think it best to indicate our opinion upon it. This is the question whether it was necessary to show that Newberry, at the time of the payment — if that should be found to have been intended as an acknowledgment of liability — knew the defects in the notice or its service, or the facts constituting the laches.

We think the law to be well settled upon sound principle, and by the general current of authority, (though there are some cases, to the contrary,) that, when there is no evidence of any notice to the indorsers — whether the plaintiff has omitted all attempt to prove it, or has made the attempt and failed — a

subsequent recognition of liability is presumptive evidence, in the nature of an implied admission, that due notice had been given. This is upon the principle that the indorser, looking to his own interest, would not be likely to acknowledge such liability unless satisfied that he had been duly notified, and was legally bound. But when it affirmatively appears that the notice which was given, or which the plaintiff claims to have been given, was defective and insufficient, this excludes all ground for the presumption of due notice, which, in the absence of any proof of notice, might otherwise have arisen from such subsequent recognition. And when, as in the present case, the plaintiff attempts to prove due notice, and only succeeds in proving a notice made at the proper time and by a proper party, but defective in form or the mode of service, and proves no other, this excludes the idea that another notice was given at the proper time, by the proper person, and served in a proper manner. Else why resort only to the proof of the defective one.

In such a case, therefore, the evidence of part payment, or an offer to pay, in the bills of the bank — though the jury should be satisfied the indorser intended thereby to recognize his liability — would authorize no presumption that due notice had been given; and the evidence could only be admissible for the purpose of showing an intentional waiver by the indorser of his right to insist upon notice, and his consent to be bound without it. To hold the indorser liable on this ground, the plaintiff must not only show the subsequent acknowledgment of his liability, but he must also, by proper evidence, satisfy the jury that it was made with a full knowledge that due notice had not been given, or of the facts constituting the laches. Positive or direct evidence of knowledge would not, of course, be necessary; but, like the fact of knowledge in other cases, it may

be inferred from any circumstances which fairly authorize the inference as one of fact. The charge of the Court in reference to the part payment entirely ignored this question of knowledge, and took it from the jury.

We think the Court properly refused to charge, as requested by defendants' counsel, "That if the note had been sold, and the legal title to the same, since the commencement of this suit, and before this trial, passed from the plaintiffs and vested in Cornelius O'Flynn, and by him transferred to Mrs. O'Flynn, the plaintiffs could not recover."

The legal title to the note appears to have been in the plaintiffs when the suit was commenced, and this being negotiable paper, we see no good reason why the suit might not be prosecuted by them for the benefit of the subsequent owner, or by such owner in the names of these plaintiffs, so long as the proceedings are in good faith, and the defendants are thereby deprived of no just defence. — *Austin v. Burchard*, 31 *Vt.*, 589; *Guernsey v. Burns*, 25 *Wend.*, 411; *Bradford v. Buckname*, 3 *Fair.*, (12 *Me.*,) 15; 2 *Pars. on B. & N.*, 437 to 443.

The judgment must be reversed, with costs, and a new trial awarded.

COOLEY J. concurred.

CAMPBELL J. did not sit in this case, having been counsel therein.

MARTIN Ch. J. dissented.