SEYMOUR v. BRUSKE.

1. TROVER—CONVERSION—TITLE OF PLAINTIFF.
    In trover against a mere wrong-doer for the conversion of logs, it is no defense that plaintiff did not cut them within the time limited by the contract by which he acquired title from the owner of the land.

2. SAME—OWNERSHIP—EVIDENCE—SUFFICIENCY.
    In trover for the conversion of logs cut by plaintiff under contract with the owner of the land, evidence as to the ownership of the brand with which they were marked and of their being cut, skidded, and floated, examined in connection with defendant's claims as to how he acquired title, and *held*, sufficient to establish plaintiff's title for the purpose of the case.

3. SAME—ABANDONMENT BY PLAINTIFF.
    In trover for certain logs, where defendant claimed title by purchase from one who had previously been a partner of plaintiff, and claimed that upon his inquiring of plaintiff as to the ownership of logs bearing the mark of the firm, plaintiff referred him to the partner, a charge that if the jury believed defendant's testimony in regard to the interview with plaintiff, it would amount to an abandonment of logs converted after that date, was sufficiently favorable to defendant.

4. SAME—LOGS—NUMBER CONVERTED—EVIDENCE.

In trover for the conversion of certain logs, evidence of the number of logs put into the water by plaintiffs, the number accounted for, and the percentage to be deducted for loss, for sunken logs, and the loss in towing and otherwise, is admissible to show approximately the logs probably converted by defendant.

5. SAME—OTHER CONVERSIONS.

Evidence of the conversion and attempted conversion by defendant of logs belonging to others than plaintiff, introduced to show that defendant was engaged in the business of stealing logs, was incompetent.

6. WITNESSES—BIAS—GROUNDS.

The fact that a witness who gives testimony against a party to the suit is not friendly to that party is permitted to be shown in order that the jury may better judge the value of the testimony given, but whether a feeling shown to exist ought or ought not to exist is not, in most cases, material.

7. WITNESSES—EXAMINATION—DISCRETION OF COURT.

The extent to which an examination into the character of the relations existing between a witness and the parties shall go is largely within the discretion of the trial court, and dependent upon the particular situation developed at the trial.

ON MOTION TO RETAX COSTS, RECALL EXECUTION, AND MODIFY JUDGMENT.

1. COSTS—REVERSAL—EFFECT.

The reversal of a judgment and an order for a new trial is in effect an allowance of the costs of this court to the party prevailing here unless grounds for the application of Rule 37 appear.

2. APPEAL AND ERROR—PRACTICE—DEATH OF PARTY—SUGGESTION AFTER JUDGMENT.

A suggestion of the death of one of the co-parties on error may properly be made after judgment as of the date of the death, and the judgment so modified that the costs shall run against the survivor alone. Section 10121, 3 Comp. Laws.

3. SAME—FAILURE TO SUGGEST DEATH—WAIVER.

The failure of a defendant in error to suggest the death of one of the two plaintiffs is an irregularity which may be waived by the survivor.

4. SAME—EXECUTION—REFORMATION—EFFECT.

Where an execution issued out of this court is recalled for the purpose of reformation, so as to comply with an amended judgment, any rights which have accrued under the execution by levy will be saved.

Error to Manistee; McAlvay, J. Submitted February 14, 1905. (Docket No. 146.) Decided May 22, 1905. Motion to retax costs, recall execution, and modify judgment on error submitted July 21, 1905. (Calendar No. 20,507.) Denied September 21, 1905.

Trover by Richard A. Seymour and John Seymour, co-partners' as Seymour Brothers, against Herman Bruske. There was judgment for plaintiffs, and defendant brings error. Reversed.

*Frank L. Fowler*, for appellant.

*P. T. Glassmire* (*Smurthwaite & Alway*, of counsel), for appellees.

OSTRANDER, J. Plaintiffs sued to recover the value of certain pine and hemlock logs. The amended bill of particulars states the number of pine logs converted as 22,000, worth $20,400, and of hemlock 1,000 logs, worth $1,200. The bill of particulars also contains the following:

"Said saw logs at the time of their unlawful conversion being on the banks of the Sable river, Upper and Lower Hamlin Lake, and upon the waters therein, and a small portion of said saw logs, to wit, about 700 hemlock saw logs, were below the dam on said Hamlin Lake, all in Mason county, Michigan."

After a trial which occupied several days, a verdict for plaintiffs for $713.30 was returned, upon which judgment was entered. Defendant brings the case to this court, assigning 125 errors, all but one of which, it is said in the brief, are insisted upon. Counsel has grouped the alleged errors for discussion, as: (1) Those relating to plaintiffs' title to the logs. (2) Those relating to defendant's title to the logs. (3) Those relating to method of proving the number of logs converted. (4, 6, 7) Errors in receiving and rejecting evidence. (5) Errors in the charge.

1. The testimony on the part of plaintiffs tended to show that during the years 1890 to 1894, most of the timber

being cut in 1890 and 1891, they owned a large quantity of pine and hemlock logs which had been cut by themselves and others on lands along Sable river and Hamlin Lake, which were marked on the ends "777," and on the bark "7," and were put in the water; that a large part of the logs were purchased from Pardee Cooke & Co., of Chicago, who gave to plaintiffs bills of sale of such timber standing on their lands as they should cut and remove within a limited number of years specified in each bill of sale; that the log marks used were originally chosen and recorded by themselves and A. E. Cartier as Cartier, Seymour & Co., in 1887, and were used by themselves and said Cartier in lumbering operations carried on by them jointly on the Pere Marquette river; that Cartier, Seymour & Co. had never lumbered on the Sable river or on Hamlin Lake, nor owned any logs there bearing said marks; that by arrangement with Cartier plaintiffs used said marks in the operations here involved. To the testimony of witnesses as to the descriptions of land from which logs were cut, to the introduction of the bills of sale, and to the record of the log marks counsel for defendant objected, and now objects, that they were not competent evidence of title; that competent evidence of title to the logs is wholly wanting. In making one of these objections counsel said:

"We are not charged here with the conversion or taking of any of these logs from the land. We are charged with the conversion that we took them from certain streams and from the lake."

In this statement counsel, as we think, overruled, properly, his own objections, and gave the reason why this point is not, as he claims it is, controlled by the rulings in *Crawford* v. *Corey*, 99 Mich. 415, and in *Solomon* v. *Widner*, 117 Mich. 524. This is not an action of trespass, nor a suit by the owner of land to recover the value of timber taken by an alleged trespasser. Plaintiffs charge conversion of logs which they had cut or purchased,

marked, and placed in the water. They showed that they had bills of sale of the timber from persons who described the lands as "belonging to us." They showed that they had taken most of the logs so cut and marked, by water, to Ludington, and had there manufactured them into lumber; that, after discontinuing operations in 1894, they had skidded a large number of these logs on the banks, and it was these skidded logs and other of such logs remaining in the water that defendant is charged with having converted. The point made that the proof did not show with certainty that all of the logs were cut within the time limits fixed in the bills of sale is not one, we think, that defendant can rely upon. But, further than this, defendant, before the trial had proceeded very far, claimed by his counsel that he had purchased the logs he is charged with converting. It is defendant's own testimony that he visited one of the plaintiffs to learn who owned the log marks in question, with the intention of buying the logs so marked, and that he was informed that Cartier owned them, and that he then purchased from Cartier; that he had caused some logs bearing these marks to be skidded, and, while he had sawed none of them, he would have done so if not prevented by men having them in charge. There is no evidence tending to show title in any one excepting plaintiffs. Defendant based his claim of title upon a purchase which recognized plaintiffs as the original owners. The court properly instructed the jury that for the purposes of this case plaintiffs had established their title to the logs at the time they were put into the water.

2. Defendant's claim of title to the logs rests upon testimony, given by himself, to the effect that in 1896 he examined the record of log marks, and found that "777" and "7," as recorded, belonged to Cartier, Seymour & Co.; that he called upon Richard A. Seymour, one of the plaintiffs, and was informed by him that Seymour Bros. had no interest in the mark, and had transferred their interest therein to Cartier; that he then saw Cartier, who

was president of the Cartier Lumber Company, and took
from him a bill of sale of certain property, including " all
deadhead logs in and about Hamlin Lake and its tribu-
taries, not in boom or on skidways, and belonging to said
Cartier Lumber Company." The bill of sale described no
log marks. Defendant testifies that Mr. Cartier told him
that "they were through there, and were not going to do
any more business, and I could have all the logs there
were there, and I asked him what the marks were, and
he said '777,' 'C's,' and a box mark altogether, and the
mark '44.' " The bill of sale is executed by "Cartier
Lumber Company, by A. E. Cartier, its president." For
the purpose of showing title to the deadhead logs, and for
the purpose of showing good faith on the part of defend-
ant, this proof and the bill of sale were offered in evidence.
The court excluded the bill of sale, and charged the jury
that the Cartier Lumber Company had, under the facts,
no interest whatever in the logs in question or in the "777"
mark; that if it undertook to sell the logs so marked with-
out the knowledge of or by consent of the Seymours, such a
sale would not be binding on plaintiffs. As we under-
stand the contention made for defendant upon this point,
it is that, if Mr. Cartier, who was one of the record own-
ers of the log mark, and, it was claimed, a partner of plain-
tiffs, represented that the Cartier Lumber Company owned
the logs bearing the mark, plaintiffs are concluded by the
rule that "a partnership is bound by the false representa-
tions, if acted upon, of any of the copartners, made with-
in the scope of the business." We need not discuss this
proposition. There is no evidence tending to show that
Cartier and plaintiffs were at that time partners, nor that
Mr. Cartier was assuming to act for such a partnership.
The testimony concerning the talks with Richard A. Sey-
mour and with Mr. Cartier was admitted. The facts tes-
tified to by defendant were denied by both Seymour and
Cartier. The court charged the jury that if they believed
defendant upon the question of the alleged interview with
Mr. Seymour it would amount to an abandonment, by

plaintiffs, of any deadhead "777" logs converted by defendant after that date, if any were so converted. This was sufficiently favorable to defendant. We do not find that any error was committed upon this branch of the case.

3. Plaintiffs, to show the number of logs converted, gave evidence of the number put into the water, the number accounted for, allowed a percentage for loss for sunken logs and for loss in towing and otherwise. This did not show or tend to show that defendant had converted any logs. But it was testimony tending to show that plaintiffs had not themselves had the logs. They were cross-examined upon the matter, and their attention called to possible losses and ways of losing logs, and the jury heard the story. Plaintiffs offered evidence tending to show that defendant sawed large quantities of their logs, and had on his yard piles of lumber showing their mark, and had admitted the sawing of the logs; that he had sold for a consideration other of the logs on which he had caused his own mark to be placed. It was not possible for plaintiffs to show the precise number of logs defendant had converted to his own use, if any. The best that could be done was to show how many were put into the water, how many were regularly thereafter accounted for to them, the probable and possible chances of loss of logs in the regular course of the business, and so by a process of exclusion arrive at the number of logs probably cut by defendant. We understand from the record there was no other sawmill than defendant's between Lake Michigan and the places where these logs were put into the water. Defendant denied having cut any logs bearing this mark. The jury had all of this testimony before them. We are of opinion that the court exercised a fair and reasonable discretion in admitting the testimony, and that no error appears.

4, 6, 7. Complaint is made because the court permitted defendant to be cross-examined about immaterial matters, and his testimony given concerning such matters

to be contradicted.    And the method of conducting some
of the cross-examination is criticised.    For example, vari-
ous witnesses, including defendant, were asked by plain-
tiffs' counsel about conversions and attempted conversions
by defendant of logs belonging to others than plaintiffs,
and with respect to some of these alleged occurrences sub-
stantive proof was offered.    It was the theory of plaintiffs,
and no mistake concerning their attitude was possible,
that defendant was engaged in the business of stealing and
sawing the logs of others, and was claiming to have pur-
chased the logs in question and others as a cover for the
willful appropriation of property.    We should, perhaps, be
justified in this case in treating the cross-examination of
defendant upon the subject of his dealings with the logs
of other people as not calling for reversal of the judgment.
But, as has been stated, plaintiffs' counsel in rebuttal of-
fered, and the court received, substantive evidence of such
alleged misconduct.    Use was made of it in the argument
to the jury. . Counsel for plaintiffs admit that it tended
to show that defendant was in the general business of con-
verting the logs of other people on this lake, and claim that
the testimony of the conversion of the logs of others was
competent upon the authority of *Ayres* v. *Hubbard*, 71
Mich. 594.    In that case a claimed trespass of land was
committed by the cutting of timber, some of which was
taken from the land of one owner and some from the land
of another owner, both trespasses or a single trespass com-
mitted at the same time affecting two pieces of land and
two owners.    The defendant settled with the owner of one
parcel of land, and proof of the transaction was ad-
mitted for the purpose of fixing the trespass upon the land
of the other owner at a time within the statute of limita-
tions.    The testimony in that case was neither offered nor
received for the purpose for which it was introduced into
this case.    Nor is the case of *People* v. *Kemp*, 76 Mich.
410, cited by counsel, authority for admitting this testi-
mony.    The testimony given upon the trial, contrasted
with the verdict returned, impresses us with the idea that

the jury were not in fact prejudiced by this evidence. We cannot say, however, that it was not prejudicial. We can say that it was incompetent.

In this same connection, we notice other assignments of error relating to the admission and rejection of testimony. The plaintiffs having called a number of men who worked for defendant, who testified to the sawing of logs bearing the "777" mark, counsel for defendant, for the purpose of showing the animus of these witnesses, properly enough asked some of them, upon cross-examination, if they had not had trouble with defendant—did not bear him ill-will. The fact that a witness who gives testimony against a party to a suit is not friendly to that party is permitted to be shown in order that the jury may better judge the value of the testimony given. But whether a feeling shown to exist ought or ought not to exist is not, in most cases, material. In the case at bar counsel for plaintiffs, both upon cross-examination of defendant and by direct questions to the witnesses, sought to and did obtain specifications of these various difficulties and disagreements not favorable to defendant's reputation. The extent to which such examinations shall go is largely within the discretion of the trial court, and dependent upon the particular situation developed at the trial. In this case the proper purpose of such testimony was, apparently, entirely lost sight of in the zeal with which the charges and counter-charges of witnesses and defendant were developed and presented to the jury.

We are not disposed, because we think it unnecessary, to discuss other errors assigned, whether they are based upon rulings of the court or upon the charge to the jury. None of them are likely to arise upon a new trial.

As to the measure of damages, the court accepted and gave the rule asserted by counsel for defendant.

For the errors pointed out, we feel obliged to reverse the judgment and order a new trial.

CARPENTER, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.

ON MOTION TO RETAX COSTS, RECALL EXECUTION, AND
MODIFY JUDGMENT.

PER CURIAM.   The plaintiff petitioner moves:

1. To retax the costs of this court.
2. To recall an execution issued out of this court for collection of taxed costs.
3. To set aside the judgment of this court, so far as the same affects Richard A. Seymour, one of the plaintiffs below and one of the defendants in error.
4. To compel plaintiff in error to suggest of record the death of said Richard A. Seymour.
5. That costs of this court abide the final determination of the cause.

Two principal grounds are asserted and relied upon. They are:

1. That the bill of exceptions is unnecessarily voluminous.
2. That, plaintiff Richard A. Seymour having deceased after judgment below and before the issuing of the writ of error, it was incumbent upon defendant, the plaintiff in error, to amend the record, and that, not having done so, the judgment of this court, reversing the judgment below and granting a new trial, is so irregular as to require reforming.

The costs of this court, as taxed by the clerk of the court, amount to $498.13.   The reversal of the judgment and order for a new trial was in effect the allowance of the costs of this court to the party prevailing here.   No application of Sup. Ct. Rule 37 was thought to be required, and upon re-examination no reason appears for such application.   This disposes of the questions raised as to the amount of the costs as taxed.

The plaintiffs sued as joint owners of the timber claimed to have been used or sold by defendant.   This court had no knowledge of the death of one of the plaintiffs.   Counsel for the plaintiffs noticed the case for hearing in this court and later filed a brief in their behalf.   In view of the statute (3 Comp. Laws, § 10121), and of the opinions of this court (*Jenness* v. *Lapeer Circuit Judge*, 42 Mich.

469; *Newberry* v. *Trowbridge*, 13 Mich. 263; *Healy* v. *Newton*, 96 Mich. 228), it seems proper to allow suggestion of the death of said plaintiff to be made now as of the time of such death, and to modify the judgment of this court, so that defendant recovers costs against the survivor alone.

As to the survivor so affected, the failure of defendant to suggest the death of his coplaintiff was an irregularity merely, which he could and did waive.

The execution issued out of this court will be recalled and reformed; so as to comply with the proper judgment. If, however, rights have accrued under said execution by levy upon the property of said survivor, said rights will be saved. Neither party will recover costs of this motion.