## NEWBERRY, plaintiff in error, *vs.* TROWBRIDGE & OWEN, defendants in error.

A notice to the endorser of a promissory note, in the following form, "Take notice, that the note of L. T. J. (describing it), endorsed by you, has been this day protested for non-payment, and the holders look to you for payment thereof," is insufficient to charge the endorser.

The case of Platt *vs.* Drake (1 *Doug. Mich. R.*, 296), affirmed.

The deposit of a notice of protest, as a drop letter (not for the purpose of transmission by mail), in the post office, or town, adjoining to, and in the immediate neighborhood of the endorser's residence, is not sufficient.

### Error to Wayne Circurt.

This was an action of assumpsit against Newberry and B. B. Kercheval (since deceased), as joint endorsers of a note of one Jamieson. The declaration was in the usual form. The plea, general issue, with notice of set-off.

The facts proved on the trial were, that the note was at its maturity duly presented for payment, and payment refused, that the note was protested, and notice given to the endorsers, in the following form : "Take notice, that the note of L. T. Jamieson (describing it), endorsed by you, has been this day protested for non-payment, and that the holders look to you for payment thereof." The notices were served by depositing one for Kercheval in the post office at Detroit, and by leaving one for Newberry at his place of business in Detroit. Newberry resided within the City of Detroit, and Kercheval at Springwells, an adjoining town.

The Circuit Court for Wayne County held, that the notice of dishonor of the note was sufficient, in point of form, to bind the defendant.

That if Kercheval resided at Springwells, the service was sufficient as to him, by a deposit of the notice in the post office at Detroit, notwithstanding he may also have had an office or regular place of business within the limits of the City of Detroit.

*S. Towle* and *A. D. Fraser*, for plaintiff in error.

Upon the first point cited : Pratt *vs.* Drake, 1 Doug. Mich. R., 296; Story on Bills, § 301; Solarte *vs.* Palmer, 7 Bing., 530 ; 5 M. & P., 475; 1 C. & J., 417; 1 Tyr., 371; 2 Clark & Finnelly, 93 ; 1 Bing. N. C., 194; 1 Scott, 1; 4 Barn. & Cress., 339; 6 D. & Ry., 505; 1 Car. & P., 555. Upon the second point : The endorsement of Newberry and Kercheval being joint, notice of dishonor must be given to both, and, if not given to both, each is discharged : Story on Prom. Notes, 375; 5 Hill, 232. The notice to Kercheval was not sufficient : 2 Hill, 587; 4 Ib., 129; 9 Martin, 267; 6 How. (Miss.), 609; 7 Ib., 570; 8 Martin, 560; 1 Martin & Y., 183; 1 Yerg., 166; 3 Litt., 499; 4 Humph., 86; 16 Pick., 392; 20 J. R., 372.

*Jas. V. Campbell,* for defendants.

The form of notice was sufficient to bind the endorsers. The case of Platt *vs.* Drake was decided upon an erroneous impression of the statute and the current of decisions. The term *protest* has always been used in connection with one kind of negotiable paper, and its meaning ascertained in law as well as popular comprehension. The protesting of a foreign bill is legal and necessary, and notice that it has been protested is always understood to mean that it has been presented for payment, and payment refused, as preliminaries to the formal act of protest. (3 *Denio,* 16; 1 *Comst.,* 186.)

Words change their meaning essentially from one period to another, and Courts recognize the change. Familiar instances of this will readily occur; the term "*noting,*" so common in the English reports, has obtained the same popular meaning there, that protesting has here. In Leftley *vs.* Mills (4 T. R., 170), it is said that this is no law term, yet in many instances, the addition to a notice of dishonor, otherwise insufficient of a simple charge for noting, has been held to inform the endorser of all the requisite steps to fix his liability. And the word "*returned*" has also been decided to be a sufficient intimation of presentment, demand and refusal. (33 *Eng. C. L.,* 128; 2 *M. & W.,* 799; 1 *Man. & Gran.,* 76.)

Not only have we in this State the common understanding of the term protest, but we have similar usages of charges to those relied on by the English Judges. In England, not only are the terms "notary" and "returned" phrases unknown to the law, and recognized merely from usage, but the English law provides no fee for notarial services, except on bills of exchange. And yet the *charges* are strongly relied upon, as informing the endorser of a regular dishonor, because, it is said, he must know from these items that a notary has acted.

50

In this State not only have we usage of charges of which alone, perhaps, no judicial notice can be taken, but statutes recognizing the right of a notary to protest promissory notes, and establishing his fees, both for protest and notice of protest. This point was overlooked in deciding the case of Platt *vs.* Drake. These provisions have been in force from an early period. (*Laws* 1821, *p.* 365 ; *Laws* 1827, *p.* 198 ; *R. D.*, 1833, *p.* 255 ; *R. S.*, 1838, *p.* 568.)

If, therefore, the English decisions were against, instead of for us, we submit that, under the laws in force when this note was protested, a notary had a right to protest a promissory note.

Such a notice as the one here sent, is good on authority (11 *Wheat.*, 431 ; 9 *Pet.*, 33, *and* 4 *McLean*, 396); which last was a decision in this District after the case of Platt *vs.* Drake. In 3 Metc., 495, the Court assumed, that where the word "protest" was used, there was no doubt of its sufficiency. In 13 Metc., 96, it was held, that mere notice of non-payment was sufficient, where the note was payable at Bank. The note in this case was payable at the Bank of Michigan, and the principle would apply, even were the word protested left out. (*See also*, 12 *Mass.*, 6 ; 2 *Hawks*, 560 ; 2 *Harrison*, 488 ; 5 *How. Miss.*, 552 ; 14 *M. and W.*, 44.)

In Wharton *vs.* Wilmarth (13 *Metc.*, 422), a notice of protest was held sufficient, and the principle was affirmed in 5 Cush. 546 ; so also, in New York, without reference to the statute, but as a principle of commercial law. (5 *Denio*, 329 ; 12 *Barb.*, *S. C. R.*, 245 ; 3 *Denio*, 16 ; 1 *Comst.*, 186 ; *Ib.*, 413 ; 2 *Sandf.*, *S. C. R.*, 330. *See also*, 10 *N. H.*, 526 ; 10 *Shepley*, 392 ; 13 *Ala.*, 390 ; 9 *Robinson*, 161.)

English Courts have established the same doctrine substantially holding, that whatever reasonably gives the endorser to understand that the paper had been presented and refused, is enough. (7 *M. G. & Scott*, 400 ; 5 *Ib.*, 687 ; 2 *M. & W.*, 799 ; 1 *M. & G.*, 76 ; 10 *Ad. & El.*, 131 ; 6 *M. &*

*W.*, 399; 7 *Ib.*, 436; 6 *Ad. & El.*, 499; 2 *Ad. & El. N. S.*, 419; *Ib.* 421.)

The notice to Kercheval through the post office was sufficient. (1 *Am. L. C.*, 396, *et seq.*; 5 *Metc.*, 212.)

By the Court, WILLSON, J.

The first question presented by the bill of exceptions, in this case, relates to the notice of protest.

The decision of this Court in the case of Platt *vs.* Drake (1 *Doug.*, 296), settled the law in regard to sufficiency of notices of protest as definitively and permanently as this Court can ever settle it. We cannot be called upon now to overthrow the doctrine settled by that case, which has been recognized and acquiesced in for twelve years or more, in the business transactions of the State. Upon this question, therefore, the Court are disposed to adopt the rule, *stare decisis.*

The next exception relates to the sufficiency of the service of the notice of protest. This point was elaborately argued, and a great number of authorities were cited as bearing upon it.

There is a decided conflict in the authorities in reference to the proper mode of serving a notice of protest. Where the endorser and endorsee reside in the same place, the service may be personal, or may be left at the place of business, or the domicil of the endorser. The deposit of the notice of protest in the present case at Detroit, was not for the purpose of transmission by mail, but was merely a drop letter. This mode of serving the notice was not sufficient. (*Ransom* vs. *Mack*, 2 *Hill*, 587; *Sheldon* vs. *Burnham*, 4 *Hill*, 129; *Ireland* vs. *Kipp*, 10 *J. R.*, 490; *Ireland* vs. *Kipp*, 11 *J. R.*, 231; *La. St. Bank* vs. *Rowell*, 9 *Martin*, 267; *Patrick* vs. *Beazley*, 6 *How. Miss.*, 609; *Hogatt* vs. *Bingham*, 7 *Ib.*, 570; *Glenn* vs. *Thistle*, 1 *Robinson La.*, 572; *Davis* vs. *Gowan*, 19 *Maine*, 447; *Clay* vs. *Oakley*, 8 *Martin*, 446;

*Smedes* vs. *Bank of Utica*, 20 *J. R.*, 372.)    Mr. Justice Trotter, in the case of Patrick *vs.* Beazley, uses the following language, which is pertinent to this case : "The Courts have manifested a constant jealousy of admitting a relaxation of the rule which requires personal service of notice, and have never permitted it, except in cases of strong necessity for the convenience.    But this necessity, under which transmissions by mail are allowed, can never be said to exist where the parties reside in the same town or place, and therefore, when that is the case, Courts will not dispense with personal notice. But it is urged, that this principle does not apply where the endorser resides beyond the limits of the town, when notice through the post office is sufficient, if it is the post office nearest his residence.    This argument assumes a distinction which has not been taken in the case, which has just been noticed, of Scott and others *vs.* Lifford, where the.allowance of the use of the penny post was not made to depend upon the question, whether the endorser resided in the City of London, or its near neighborhood.    And the effect of that decision is manifestly at war with any such discrimination, for it puts the residence in the near *neighborhood* of the city upon the same ground with a residence in the *city*.    To permit this distinction, would necessarily expose parties entitled to notice to an uncertain, and very often to a capricious and arbitrary rule, extremely embarrassing to Courts in making an application of it, and therefore injurious to commercial pursuits.    It is often very difficult to determine the precise limits of towns, where they have not been incorporated ; and in that case, different opinions may exist as to where they cease, and the country begins.    In cases of cities or incorporated towns, a surer criterion is fixed by the boundary line, and yet a moment's reflection must satisfy every one, that the rule would not be less exposed to embarrassment, if not ridicule ; for it may so happen, and in large commercial towns such will no doubt often be the case, that a party living

within the environs of the place may yet be beyond the actual boundary line of the Corporation, and so lose a privilege to which he would be otherwise clearly entitled. And, as was very properly said by the counsel for the defendant, it may turn out that two persons may be subject to a different law who yet reside within twenty steps of each other, the one within, and the other beyond the line. And again, one who resides two miles from the holder may claim personal notice, while another, living perhaps within fifty yards of him, must take his chances of the post office. . Such a discrimination appears to us to be without reason or foundation. The obvious meaning of Courts, when they require personal notice, if the endorser lives in the same town or place, is, the same immediate neigborhood, whether it be town or country. It was evidently so understood by the Judges in New York, in Kipp's case, and has been so considered by the Supreme Court of Tennessee in two cases like the one at bar.

Our attention was called on the argument, by the counsel for the defendants in error, to a number of respectable authorities establishing a contrary doctrine. But, after a careful examination of all the authorities cited, we think the true rule is, and should be, that in the service of notice of protest by mail, the post office can be used as a mode of transmission, and not as a place of deposit.

We are, therefore, of the opinion that the judgment below must be reversed, with costs to the plaintiff in error.

Present, WILLSON, BACON, GREEN, JOHNSON, J. J.