E. C. JOHNSON v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 24 April, 1907).

1. **Telegraph Companies—Stare Decisis.**—Under the doctrine of *stare decisis,* the Supreme Court should adhere to its own decisions unless it clearly appears that they are wrong.

2. **Same—Damages—Place of Contract—Conflict of Laws.**—The liability of a telegraph company for damages for mental anguish, for negligence in transmitting telegraphic messages from its office in one State to that of another for delivery, is determined by the laws of the State in which the message was received for transmission.

CIVIL ACTION, tried before *Moore, J.,* and a jury, at the October Term, 1906, of the Superior Court of DURHAM County.

Action to recover damages for mental anguish arising from failure to deliver a telegram sent from Danville, Va., to Durham, N. C., as follows: "To E. C. Johnson, Durham, N. C.: Sidney died last night, 25 minutes after 9." The charges for transmitting said message were prepaid by plaintiff. The Sidney referred to was plaintiff's son.

The Court submitted the usual issues and the following

additional issue: "3. Under the law of the State of Virginia, can damages for mental suffering independent of any injury to person or estate be recovered against a telegraph company for negligent failure to deliver a message or for negligent delay in the delivery of a message, although the telegraph company is advised of the character of the message? Answer: No." The jury answered the other issues for plaintiff and assessed damages at $300. It is admitted that there is no other evidence of damage than mental suffering. The defendant moved for judgment upon the admissions and the finding of the jury upon the third issue. The Court overruled the motion, and the defendant excepted and appealed.

*Winston & Bryan* for plaintiff.
*Fuller & Fuller* for defendant.

BROWN, J. The exact question presented for decision has been considered and decided in this State adverse to plaintiff's contention, and following such decision the Court below should have granted the defendant's motion, it being admitted that there is no other evidence of damage except that arising from mental suffering alone. *Bryan v. Telegraph Co.,* 133 N. C., 607. In that case a telegram of similar character was sent to the plaintiff at Wedgefield, S. C., from Mooresville, N. C. The message was promptly transmitted to Wedgefield but was never delivered, the operator there wiring back, "Party unknown." The plaintiff came over to North Carolina and brought suit against the telegraph company for damages for mental anguish. It was admitted that at that time she could not recover such damages in South Carolina. This Court held that the contract having been made in North Carolina, damages must be assessed according to the law of North Carolina, and the plaintiff was permitted to recover in our courts for her

mental suffering. The case was first decided at August Term, 1902, upon appeal from a judgment of nonsuit in the Superior Court. A *per curiam* judgment was rendered affirming the judgment of the Superior Court. At August Term, 1903, the cause was reheard, and after mature deliberation the former judgment was reversed in an elaborate and forceful opinion by *Chief Justice Clark*. In referring to the question involved in the case at bar, the learned Judge. says:

"The last objection is that the wrong, if any, occurred in South Carolina and is to be tried by the laws of that State, which it is alleged did not at that time allow the recovery of damages for mental anguish. A case exactly in point is *Reed v. Telegraph Co.*, 58 Am. St. Rep. (Missouri), 609, 34 L. R. A., 492, which holds that 'if a telegraph message is delivered to the company in one State to be by it transmitted to a place in another State, the validity and interpretation of the contract, as well as its liability thereunder, is to be determined by the laws of the former State.' The contract was made at Mooresville in this State; it is a North Carolina contract, and damages for its breach are to be assessed according to the liability attaching to such contract under our laws. The Code, sec. 194 (2), authorizes an action against a foreign corporation 'by a plaintiff, not a resident of this State, when the cause of action shall have arisen    *   *   *    within this State.' "

It is manifest that the fact that the plaintiff, a non-resident, came to this State and brought suit makes no difference between that case and the case at bar. The principles of law governing the case are the same, whether the suit is brought in our courts by a resident of this State or a non-resident who comes here and institutes his action under our Code. *Cannaday v. Railroad,* 143 N. C., 439.

The learned counsel for the plaintiff was evidently inad-

vertent to *Bryan's case* when he stated that this question is now presented here for the first time. In that case it is distinctly held that it is a North Carolina contract and damages must be assessed under our laws and not under the laws of South Carolina, where the breach occurred. This doctrine was reaffirmed and *Bryan's case* cited and approved by this Court, as at present constituted, in *Hancock's case,* 137 N. C., 499, in the following language: "If a telegraphic message is delivered to the company in one. State to be transmitted by it to a place in another State, the validity and interpretation of the contract, as well as the rule measuring the damages arising upon a breach and the company's liability therefor, are to be determined by the laws of the former State, where the contract originated." It is true that the telegram in that case originated in Maryland and was sent into Virginia, both of which we now know do not recognize the mental-anguish doctrine. But it is to be noted that in *Hancock's case* there was no evidence that Virginia did not recognize such doctrine, and the case was decided solely upon the law of Maryland. This further appears on the second hearing of the case (142 N. C., 163).

Thus we see that the principle laid down in *Bryan's case* was settled upon after mature consideration upon a rehearing, and has been reaffirmed subsequently by a unanimous Court in *Hancock's case* and later in an elaborate opinion by *Justice Hoke* in *Hall's case,* 139 N. C., 373. The weightiest considerations should move the Court to adhere to its decisions unless it clearly appears that they are wrong. As is well said by *Mr. Justice Walker* in *Hill v. Railroad,* 143 N. C., 539, "The doctrine of *stare decisis,* commonly called the 'doctrine of precedents,' has been firmly established in the law. It means that we should adhere to decided cases and settled principles, and not disturb matters which have been established by judicial determination."

The opinion of the *Chief Justice* in *Bryan's case* is supported by abundant authority, although we admit the cases and text-writers are not in accord. The contract entered into at Danville for the benefit of this plaintiff may be regarded as a continuous and indivisible contract, the performance of which may run through several States. It was entered into in Virginia and partially performed in that State. The case of *Reed v. Telegraph Co.,* 135 Mo., 661, cited by the *Chief Justice* in *Bryan's case,* is a direct authority for his position and is a case where the telegram was sent from Iowa to Missouri. In the opinion, it is said: "The contract was made in Iowa and according to the terms was to be partially performed in that State." Again: "Does the circumstance that it was to be partially performed in Missouri exempt it from the laws of Iowa? We think most clearly not." In *Faulkner v. Hart,* 82 N. Y., 413, goods were shipped under contract from New York to Boston. They were burned in Boston under circumstances which freed the carrier from liability under the laws of Massachusetts. The New York Court applied the laws of New York, where the contract was made, and held defendant liable. To the same effect is *Hartman v. Railroad,* 39 Mo. App., 89. Mr. Page, in his work on "Contracts," recognizes the doctrine laid down in the *Reed case,* for, after stating that it has been held that the law of each place of partial performance governs, he says: "On the other hand, it has been said that if a contract is to be performed in part where made and in part elsewhere, the law of the place where it is made and performed in part will control, etc."

Where the contract is made in one State to be fully performed in another, the law of the latter governs. "This rule is founded," says the Supreme Court of Wisconsin,

"on the idea that in making a personal contract to be *fully* performed in another State, the parties must have had the law of that State in view. But if the contract is to be partly performed where made and partly in other countries or States, the law of the place where it is made will still govern, unless a clear *mutual* intention is manifested that it shall be governed by the law of some other country." *Bartlett v. Collins,* 109 Wis., 477. To same effect are *Liverpool Co. v. Phœnix Insurance Co.,* 129 U. S., 397; *Morgan v. N. O. Railroad Co.,* 2 Wood, 244, Fed. Cases, No. 9804; *Hudson v. Railroad,* 92 Iowa, 231, 54 Am. St. Rep., 550; *Railroad v. Bebee,* 174 Ill., 13; *Cochran v. Ward,* 5 Ind. App., 89, 51 Am. St. Rep., 229, and note; *Schultz v. Howard,* 63 Minn., 196.

The principle declared in *Bryan's case,* and reaffirmed in *Hancock's case* and in *Hall's case,* is expressly maintained by the Supreme Court of Texas in *Telegraph Co. v. Waller,* 74 S. W., 751, wherein it is held: "Where a telegraph message is delivered to the company at a point in Texas for transmission to a point in Indian Territory, the damages for mental anguish suffered by the addressee, owing to delay in the delivery of the message in the Indian Territory, may be recovered in Texas, though such damages are not recoverable in the Indian Territory." In a later case the same Court held that "where a message was given to a telegraph company in Arkansas and transmitted to its destination in Texas, where the agent negligently failed to deliver the same to the addressee, a recovery is governed by the laws of Arkansas, and damages for mental anguish, not being recoverable there, cannot be recovered in a suit in Texas." *Telegraph Co. v. Buchanan,* 80 S. W., 561. Both of these cases refer to antecedent cases in the same Court, holding the same doctrine, and they also refer to and

rely upon the leading case of *Reed v. Telegraph Co.,* cited by the *Chief Justice* in his opinion in the *Bryan case,* and are based upon the doctrine that "contracts are to be governed by the law of the State where entered into, unless a different intention is expressed or implied by the contract." *Telegraph Co. v. Christensen,* 78 S. W., 744.

It will be observed that the decisions of this Court are on all-fours with the above-quoted Texas cases. In the *Bryan case* the telegram originated in North Carolina and was sent to South Carolina, where the breach occurred. The law of North Carolina was applied. In the *Hall case,* which is in every respect identical with the case at bar, the telegram originated in Virginia and was sent to North Carolina, where the breach occurred and where the suit was brought. The law of Virginia was applied by *Mr. Justice Hoke,* who, speaking for a unanimous Court, said: "The complaint averring that the contract was made in Virginia, the rights of the parties will be determined by the laws of Virginia so far as the same apply." The learned Justice cites and approves both the *Bryan* and the *Hancock* cases.

The *lex loci solulionis* seems to apply to those contracts made in one country and to be wholly performed in another, indicating thereby two distinct places of contract, one where it is entered into, and the other where it is to be entirely performed. *Locus, ubi contractus celebratus est; locus, ubi destinata solutio est.* It may be said that the law of the place governs only as to the validity and interpretation of the contract, and not as to the means of enforcing it or compensating for its breach. The *lex loci* seems to embrace more than that. It is said in 9 Cyc., 668: "This law (of the place) governs not only as to its execution, authentication and construction, but also as to the legal obligations arising from it, and as to what is to be deemed a perform-

ance, satisfaction or discharge." *Davis v. Morton,* 96 Am. Dec., 345. The Supreme Court of Indiana holds that the law of the place includes the remedy there given for its breach, but does not interfere with a question of legal procedure, which is governed by the *lex fori.* *Cochran v. Ward, supra,* and 51 Am. St. Rep., 229. The Supreme Court of the United States says: "It is also the settled doctrine of this Court that the laws which subsist at the time and place of making a contract enter into and form a part of it as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge and enforcement." Again: "The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than its means of enforcement. This is the breath of its vital existence." *Edwards v. Kearsey,* 99 U. S., 595. The Court evidently was governed by these and similar cases when it held in *Bryan's case,* as well as *Hancock's* and *Hall's cases,* that the law of the place included the question of damage as well as the validity and interpretation of the contract. While we recognize that respectable authority may be found militating against the position this Court has heretofore taken, we do not feel that we should depart from the precedents we have already made.

Reversed.