than himself, unless such goods are contained in the original packages * * *
and under the labels, marks or names placed thereon by the manufacturer
who is entitled to use such marks, names, brands or trade-marks, * * *
shall be guilty of a misdemeanor."

I am of the opinion that this statute does not apply to the case of
a sale where the original package has by the owner been broken; in
other words, had the bartender sold a bottle of what purported to be
Wilson whisky as originally bottled by the manufacturer, but which
was not, the statute would apply to him; but, having broken the
original package, the bottle, then a sale of part of its contents, whether
it were Wilson whisky or not, did not violate the statute. The lan-
guage is that a sale shall not be made "unless such goods are contained
in the original package." Its purpose is to protect the owners of trade-
marks by making it a crime to sell or offer to sell goods covered by
a trade-mark owned by another, unless the goods, when sold or offered
for sale, are contained in the package in which they were put up by
the manufacturer and have thereon the labels, marks, or names con-
stituting the trade-mark by which the manufacturer desires the goods
to be known and introduced. That this is the proper construction to
be put upon this statute was settled, so far as this court is concerned,
in People v. Hoffheimer, 110 App. Div. 423, 97 N. Y. Supp. 84.

If the statute is to be construed in the manner set forth in the pre-
vailing opinion, it may well be doubted whether it is constitutional, in
that it confiscates a property right. Wynehamer v. People, 13 N. Y.
378. If the original packages are destroyed or injured to such an ex-
tent that the goods contained therein cannot be sold therefrom, through
no fault of the seller, then he is prohibited from selling them as the
goods of the maker, which might well constitute a large part of their
value. But it is not now necessary to pass upon this question, inas-
much as the statute does not apply to the facts proved.

The judgment of conviction, therefore, should be reversed, and a
new trial ordered.

INGRAHAM, J., concurs.

————————

TOWN OF FT. EDWARD v. HUDSON VALLEY R.Y. CO.

(Supreme Court, Appellate Division, Third Department.    June 18, 1908.)

1. STATUTES—CONSTRUCTIONS—EFFECT TO BE GIVEN TO EVERY WORD.
    In construing a statute, full effect must be given to every word used.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 266–
288.]

2. INJUNCTIONS — PRELIMINARY  INJUNCTION — DENIAL—GROUNDS—STATUTORY
    PROVISIONS—"GENERAL AND ORDINARY BUSINESS OF A CORPORATION."
    Code Civ. Proc. § 1809, providing that an injunction shall not be grant-
    ed ex parte which operates to suspend "the general and ordinary busi-
    ness of a corporation," contemplates only injunctions extending to a
    total suspension of corporate business, and has no application to an in-
    junction restraining a single act or duty.
    [Ed. Note.—For other definitions, see Words and Phrases, vol. 4, p.
3056.]

**3. STREET RAILROADS—RIGHTS.TO USE STREETS.**

    A railroad company occupying a public street may run its cars back. and forth through the street, stop on switches for the passing of other cars, and take on passengers and freight upon the street to a reasonable extent; but, if its freight becomes so extensive that to place a car in the highway and receive freight there amounts to a practical obstruction of the highway or unreasonable interference with its use by the public, the company must receive its freight at a private station.

**4. SAME.**

    What amounts to an unreasonable obstruction of the highway is a question of fact for the trial court, and not only the actual obstruction, but any littering of the highway by reason of receiving freight thereon so as to frighten horses, would be chargeable to the railroad both as cause and occasion thereof.

**5. SAME—TEMPORARY INJUNCTION AGAINST CORPORATION—GROUNDS—AFFECTING PUBLIC GENERALLY.**

    An injunction interfering with the loading of freight in the street by a railroad company operating over the streets, on the ground that the company was obstructing the highway, should not be granted except upon a full investigation by trial, since not only the company, but the public offering its freight for carriage, is affected.

Appeal from Special Term, Washington County.

Suit by the town of Ft. Edward against the Hudson Valley Railway Company for an injunction. From an order vacating an ex parte injunction, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Henry W. Williams, for appellant.

William L. Kiley (James McPhillips, of counsel), for respondent.

SMITH, P. J. The granting of this injunction ex parte was not in my judgment a violation of section 1809 of the Code of Civil Procedure. By that section it is required that an injunction shall not be granted ex parte which operates to suspend "the general and ordinary business of a corporation." The Code provision is not clear. It is difficult to tell what is the general, as distinguished from the ordinary, business of the corporation. We are required to interpret a statute to give full effect to every word used, and the only interpretation that can satisfy this rule is one that shall prohibit the granting of an injunction ex parte which shall suspend generally the ordinary business of a corporation. In 2 Nichol's Practice, p. 1573, in speaking of this provision, it is said:

"It refers only to injunctions extending to a total suspension of corporate business, and has no application where the injunction restrains only a single act or duty. Thus enjoining a railroad corporation from intersecting the road of another company of which plaintiff is a member does not suspend the general business of the corporation."

This seems to be the interpretation practically given to the statute in Roosevelt v. Edson, 7 Civ. Proc. R. (N. Y.) p. 5, by the Special Term of the Superior Court, and this interpretation also finds some support in Howlett v. N. Y. W. S. & Ry. Co., 14 Abb. N. C. (N. Y.) 328.

Nor is it difficult to define the rights of a railroad company occupying the public street. They may run their cars back and forth through

the street. They may stop on switches for the passing of other cars. They may take on passengers and freight upon the street itself to a reasonable extent. If, however, their freight becomes so extensive that to place a car upon a given point in the highway, and there receive freight amounts to a practical obstruction of the highway, or unreasonable interference with its use by the public, then the company must procure a private station at which the freight can be received. What may amount to an unreasonable obstruction of the highway is in all cases a question of fact to be determined by the trial court, and upon this we are of opinion that not only the actual obstruction of the highway, but any littering of the highway by reason of the receiving of freight thereupon so as to frighten horses, would be chargeable to the defendant, both as cause and occasion thereof. Notwithstanding these views, we are of opinion that the injunction was properly vacated. Not only is the defendant affected by the force thereof, but the public generally, offering its freight for carriage upon the defendant's road. There is hardly a necessity for a temporary injunction which will lead the court to curtail either the business of the defendant or of defendant's shippers until a full investigation by trial.

The order should, therefore, be sustained, with $10 costs and disbursements.

Order affirmed, with $10 costs and disbursements. All concur.