In the Matter of the Estate of Louisa Herle, Deceased.

Surrogate's Court, Kings County, November 5, 1937.

*Walter Jeffreys Carlin,* for the temporary administrator, Lafayette National Bank and Trust Co., respondent.

*Walter R. Pickett,* for the petitioner John Frederick Getreu, claimant.

WINGATE, S. Although the institution of a proceeding under section 127 of the Surrogate's Court Act for permission to sue a temporary administrator is not a novel experience, neither the diligence of the exceptionally able and experienced counsel in this

case nor the independent research of the court have disclosed any precedent adjudicating the right of such relief in a situation similar to that here disclosed.

According to the demonstration of the record, the decedent, at some undisclosed date, opened an account with the Brevoort Savings Bank in the title of " Louisa Herle in trust for John Frederick Getreu." This account was still in existence at the time of her death, and now contains a balance of upwards of $8,000.

In view of the absence of local demonstrated statutory distributees and of the size and diversified nature of the estate of the decedent, Lafayette National Bank was appointed temporary administrator pending the determination of the identity of the statutory distributees and the validity of the several purported testamentary documents which have been forthcoming. The former of these tasks has proved a monumental one, but the stage is now set for the second act, of the determination as to whether the decedent died testate or whether her estate is to devolve pursuant to the Statute of Distribution.

Mr. Getreu now desires to compel the temporary administrator to deliver to him the savings bank book evidencing the account to which reference has been made which was found among the effects of the deceased, and seeks the permission of this court for the institution of a proceeding in another forum designed to effect this purpose.

The portion of section 127 of the Surrogate's Court Act which is pertinent in this connection reads: " An action may be maintained against him [i. e., a temporary administrator], by leave of the surrogate, upon a debt of the decedent, or of the absentee whom he represents, or upon any cause of action to which the decedent or absentee would have been a party in like manner and with like effect as if he were an administrator-in-chief."

The only judicial intimation relative to a situation similar to that here presented was made by the Appellate Division of the First Department in 1900 in the case of *Harrison* v. *Totten* (53 App. Div. 178) in the form of an extremely tentative dictum. The decedent in that case was the grandaunt of the plaintiff. The latter sought to recover from the temporary administrator of the estate savings bank books evidencing accounts in so-called " trust " form, similar to that in the case at bar. There was evidence of frequent statements by the decedent that she intended the money in these accounts to become the property of the plaintiff. After her death the books were found among her effects. Upon the trial the court dismissed the complaint on the ground that " no irrevocable trust was created in favor of the plaintiff " under the authorities.

The Appellate Division, while expressly refraining from criticizing the rule of law enunciated by the trial court, held that the additional evidence of intention which had been adduced was sufficient to raise a justiciable issue, and that in consequence a dismissal of the complaint on the merits was erroneous and that a new trial should be had. The court thereupon made the observations upon which the present petitioner seizes as support for his position. The opinion reads (at p. 180): "We have not overlooked the other question urged upon our attention to support the judgment, namely, that the action is not maintainable against the defendant as temporary administrator; but we do not think, in view of the course that the trial took, wherein that question was neither considered nor determined, that we should take advantage of this point to support a judgment which was entered upon a wrong theory. Were we, however, obliged to decide that question, our inclination would be to favor the view contended for by the plaintiff that she can maintain an action against the temporary administrator to recover property which she alleges belongs to her, and which is wrongfully withheld by him, and that such an action in no way conflicts with the provisions of section 2672 of the Code of Civil Procedure, which, by allowing an action to be maintained 'by leave of the surrogate upon a debt of the decedent,' impliedly negatives the right to maintain such an action for any other purpose. However, it will be time enough to dispose of that question when it is properly before us, our conclusion being upon the question presented on this appeal, as to whether the plaintiff made out a *prima facie* case in support of her title to the pass books, that the court below took an erroneous view."

Perhaps the most fundamental characteristic of Anglo-Saxon law as distinguished from other systems of jurisprudence is its deference to the principle of *stare decisis*, which may be defined as the obligation of courts to adhere to the results of decided cases and to refrain from disturbing general principles which have been established by judicial determination. (Cf. *Johnson* v. *Western Union Tel. Co.*, 144 N. C. 410; 57 S. E. 122, 124; *Moore* v. *City of Albany*, 98 N. Y. 396, 410; *Hart* v. *Metropolitan Street R. Co.*, 65 App. Div. 493, 495.) The theory underlying this principle is that " certainty is of the very essence of the law." " That shifting and changing rules or principles do not constitute law," and that " The avoidance or prevention of litigation through the establishment of fixed and certain rules is a useful and beneficent effect of litigations had." (*Matter of Grifenhagen* v. *Ordway*, 218 N. Y. 451, 458.)

Whereas the application of this principle has frequently been limited to the decisions of courts of last resort (*Matter of Brolasky*,

302 Penn. St. 439, 440; 153 A. 739, 741; *Diamond Plate Glass Co.* v. *Knote,* 38 Ind. App. 20, 21; 77 N. E. 954, 955; *City of Sedalia* v. *Donohue,* 190 Mo. 407, 409; 89 S. W. 386, 388; *Kearney* v. *Buttles,* 1 Ohio St. 362, 367; *Newberry* v. *Trowbridge,* 4 Mich. 391, 395; *Calhoun Gold Min. Co.* v. *Ajax Gold Min. Co.,* 27 Colo. 1, 8; 59 P. 607, 612; *Inman* v. *Sherrill,* 29 Okla. 100, 102; 116 P. 426, 427), it would, indeed, be a venturesome court of first impression which would fail to accord controlling effect to the decisions of an intermediate court of review, particularly if its current determination would come before this particular tribunal for an evaluation of the result attained.

The principle is, of course, not applicable to courts of coordinate jurisdiction (*Malan* v. *Simpson,* 20 How. Pr. 488, 489; *People ex rel. Rice* v. *Graves,* 242 App. Div. 128, 135; *Matter of Watson,* 86 Misc. 588, 598, 599; affd., *sub nom. Matter of Hoffman,* 165 App. Div. 252; revd. on other grounds, 215 N. Y. 209; *People ex rel. Battista* v. *Christian,* 131 Misc. 411, 413; affd., 249 N. Y. 314; *Matter of Cohen,* 147 Misc. 570, 572; *Matter of Guarneri,* 149 id. 759, 760; *Matter of O'Donnell,* 153 id. 480, 481; *Matter of Draske,* 160 id. 587, 593; *Matter of Kathan,* 141 N. Y. Supp. 705, 712, not otherwise reported), which are at liberty to attain differing results if convinced that such a course would be more legally proper and, indeed, it has been said, are under obligation personally to determine the propriety of any legal principle advanced, " when no decision has been rendered by the court of last resort, or when no conclusive reason is given for the decision reached." (*People ex rel. Davison* v. *Williams,* 85 Misc. 553, 555; affd., 164 App. Div. 900; affd., 213 N. Y. 130. See, also, *Montrose* v. *Baggott,* 161 App. Div. 494, 501, 502.)

A further consonant limitation on the rule of *stare decisis* is found in the fact that its application is limited to actual determinations in respect to litigated and necessarily decided questions and that it does not apply to dicta or " *obiter dicta* " (*Hogan* v. *Board of Education,* 200 N. Y. 370, 373; *Stokes* v. *Stokes,* 155 id. 581, 594; *Roberson* v. *Rochester Folding Box Co.,* 171 id. 538, 551; *People ex rel. McLaughlin* v. *Police Commissioners,* 174 id. 450, 465), which have respectively been defined as " opinions of a judge which do not embody the resolution or determination of the court, and made without argument, or full consideration of the point, are not the professed deliberate determinations of the judge himself " and " opinions uttered by the way, not upon the point or question pending." (*Rohrbach* v. *Germania Fire Insurance Co.,* 62 N. Y. 47, 58.) As is pointedly observed in *Colonial City Traction Co.* v. *Kingston City R. R. Co.* (154 N. Y. 493, 495) and quoted with

embellishments in *Crane* v. *Bennett* (177 N. Y. 106, 112): "It was not our intention to decide any case but the one before us,  *  *  * and our opinion should be read in the light of that purpose. If, as sometimes happens, broader statements were made, by way of argument or otherwise, than were essential to the decision of the questions presented, they are the dicta of the writer of the opinion and not the decision of the court. *A judicial opinion, like evidence, is only binding so far as it is relevant, and when it wanders from the point at issue it no longer has force as an official utterance.*" (Italics not in original.)

It is accordingly obvious that the *obiter dicta* on the present question in the *Harrison* case do not possess the force of law, and that it is not only the privilege but the obligation of this court to examine the pertinent legal principles which are involved in the instant controversy in like manner as if it had never been written.

Since under the terms of section 127 of the Surrogate's Court Act an action may be maintained against a temporary adminis-trator only " by leave of the surrogate " and not, as in the case of an administrator-in-chief or executor, as a matter of right, the conception inevitably emerges that in the former connection the court has been vested with a measure of judicial discretion to permit or prohibit the institution of such a suit, since if it were obligatory upon the court to grant leave whenever a request therefor was made, the implied requirement of application therefor would enforce the doing of a wholly futile and useless act. On primary principles an absurd and oppressive purpose is not gratuitously to be attributed to the Legislature in the enactment. (*Sharkey* v. *Thurston,* 268 N. Y. 123, 127; *East* v. *Brooklyn Heights R. R. Co.,* 195 id. 409, 412; *Flynn* v. *Prudential Ins. Co.,* 207 id. 315, 318; *Matter of Rouss,* 221 id. 81, 91; *People ex rel. Royal Bank of Canada* v. *Loughman,* 226 App. Div. 593, 596; affd., 254 N. Y. 512.) It follows that the court must be deemed vested with a judicial dis-cretion to grant or deny the leave to sue for which application is thus required.

A further preliminary question concerning the meaning of section 127 is necessary of consideration. It provides, it is true, that if leave be accorded, an action may be maintained against a temporary administrator. It does not, however, stop there, but proceeds with a specification respecting the underlying rights upon which such action may be based, enumerating two and only two in this connection, namely, *first,* " upon a debt of the decedent  *  *  * whom he represents," and, *second,* " upon any cause of action to

which the decedent * * * would have been a party." The question thereupon arises as to whether this specification impliedly inhibits the institution of an action, with or without leave of court, upon any right not coming within one or the other of these descriptions.

The first point of approach to the solution of this question lies in a recollection of the nature of the office of temporary administrator. He is merely a conservator of the assets of the estate or, as was succinctly stated by Surrogate FOLEY in *Matter of Hanford* (113 Misc. 639, 641): " Temporary administrators are the receivers of this court." (See, also *Matter of Ort*, 217 App. Div. 422, 423; *Hastings* v. *Tousey*, 123 id. 480, 482; *Matter of Philp*, 29 Misc. 263, 266; *Matter of Burnham*, 114 id. 455, 456; *Matter of DePolo*, 146 id. 744, 745; *Matter of Levine*, 157 id. 454, 457.)

Since the temporary administrator, like any other receiver, is merely the *alter ego* of the particular court of his appointment for the performance of duties actually devolving upon the court itself in respect to assets which have been brought into *custodio legis* (*Matter of Levine*, 158 Misc. 116, 119), he, like any other receiver, is incapable of being sued without the permission of the appointing authority. (*Matter of Christian Jensen Co.*, 128 N. Y. 550, 553; *Rinn* v. *Astor Fire Ins. Co.*, 59 id. 143, 148; *Matter of Union Bank of Brooklyn*, 176 App. Div. 477, 482; *Matter of French*, 181 id. 719, 732; *Town of Greenburgh* v. *Shalleck*, 247 id. 813.) " It is a general rule that before suit is brought against a receiver, leave of the court by which he was appointed must be obtained." (*Barton* v. *Barbour*, 104 U. S. 126, 128; *Matter of N. Y. Municipal R. Corp.* v. *Holliday*, 189 App. Div. 814, 819.)

It is obvious, therefore, that even in the absence of the enactment, a temporary administrator, as the receiver of the court, could not be sued without the permission of the surrogate. Section 127, however, goes further and specifies two varieties of claims upon which suit may be brought if such leave be given. Does this partial authorization exclude the possibility of the maintenance of a suit founded upon any demand other than the two specified? The answer appears to be an inevitable affirmative for three separate reasons: *First*, it may not be presumed that the Legislature performed a wholly futile act in the insertion of this provision as would be the case if its purpose had been merely to indicate that leave of court was essential before suit could be maintained against this variety of receiver.

*Second*, the express authorization for the maintenance of two and only two classes of suits, impliedly denies, by application of the

familiar canon of statutory construction, *inclusio unius est exclusio alterius*, the right to maintain any suit not falling within the particular description. (*Morton* v. *Horton*, 189 N. Y. 398, 400; *Aultman & Taylor Co.* v. *Syme*, 163 id. 54, 57; *People ex rel. Peck* v. *Commissioners*, 106 id. 64, 68; *Smith* v. *Brooklyn Savings Bank*, 101 id. 58, 62; *Konner* v. *State*, 180 App. Div. 837, 842; affd., 227 N. Y. 478; *Matter of Hering*, 133 App. Div. 293, 295; affd., 196 N. Y. 218; *Deth* v. *Castimore*, 245 App. Div. 156, 160; *Matter of Engel*, 155 id. 467, 469; *Matter of Burger*, 155 Misc. 503, 506; *Matter of Kennedy*, 149 id. 188, 189; *Matter of Friday*, 148 id. 899, 900.)

Finally, the effect of a determination that the statute was construable as permitting an authorization of any variety of suit would have the result of denying any meaning to the additional words inserted in the enactment which read: " Upon a debt of the decedent, or of the absentee whom he represents, or upon any cause of action to which the decedent or absentee would have been a party," and, in effect, of completely deleting them from the enactment. It is a primary principle of statutory, as it is of documentary, construction that it is the obligation of the court, whenever possible " to give full effect to every word used." (*Town of Fort Edward* v. *Hudson Valley R. Co.*, 127 App. Div. 438; to like effect see *Allen* v. *Stevens*, 161 N. Y. 122, 145; *People ex rel. Killeen* v. *Angle*, 109 id. 564, 575; *Matter of New York & Brooklyn Bridge*, 72 id. 527, 530; *Painter* v. *Town Board of Oyster Bay*, 230 App. Div. 281, 285; *Matter of Bass* v. *Board of Trustees*, 226 id. 165, 167; *Clary* v. *Fitzgerald*, 155 id. 659, 664; *Baxter* v. *York Realty Co.*, 128 id. 79, 80; affd., 198 N. Y. 521; *Matter of Stewart*, 138 Misc. 866, 867.)

The conclusions seem inevitable, therefore, *first*, that no suit may be maintained against a temporary administrator except by permission of the surrogate by whom he was appointed; *second*, that the surrogate has no authority to grant such permission except in respect to a claim upon a debt of the decedent or a cause of action to which the decedent would have been a party, if living; and, *third*, that in the case of either of these two permissible bases of suit, the surrogate possesses a judicial discretion to grant or deny the requisite leave.

The next step in the evaluation of the application at bar concerns the determination of whether or not a suit in replevin to recover a savings bank book where the decedent opened the account with her own funds " in trust for " a named individual and failed, in her lifetime, to do anything which could be construed as an " unequivocal act or declaration " (*Matter of Totten*, 179 N. Y. 112, 126)

sufficient to transform the deposit either into a gift or an express trust *inter vivos*, is either a " debt of the decedent " or " a cause of action to which she would have been a party," if living. This resolves itself into an inquiry as to whether the mere opening of a savings bank account in trust form gives rise to any rights in the named beneficiary against the depositor during the lifetime of the latter. The answer to this query is an emphatic negative.

Whatever euphonious appellation may be given to the act of the depositor in such a transaction, the law is wholly clear that, in the absence of some " unequivocal act or declaration," amounting in substance to a present gift, the so-called beneficiary receives no rights whatsoever in the subject-matter of the deposit until the death of the depositor. (*Matter of Totten*, 179 N. Y. 112, 125; *Mabie* v. *Bailey*, 95 id. 206, 210; *Beaver* v. *Beaver*, 117 id. 421, 428, 430; *Matter of Richardson*, 134 Misc. 174, 177; *Matter of Kive*, 139 id. 273, 276; *Matter of Vaughan*, 145 id. 332, 334; *Matter of Rasmussen*, 147 id. 564, 565, 566; *Matter of Timko*, 150 id. 701, 704; *Matter of Kelly*, 151 id. 277, 281; *Matter of Curran*, 153 id. 630, 632; *Matter of Weinberg*, 162 id. 867, 872.) The practical result of the act of opening and continuing the account amounts merely to a specific bequest of the balance remaining in the account at the death of the depositor (*Matter of Reich*, 146 Misc. 616, 618; *Matter of Weinberg*, 162 id. 867, 872), which takes effect, so as to vest any rights in the beneficiary, only on the death of the depositor. (See cases above cited and, also, *Beakes Dairy Co.* v. *Berns*, 128 App. Div. 137, 138.)

Since no right in the beneficiary comes into being until after the depositor is dead, the conclusion is inevitable that the transaction is not one which constitutes a " debt " of the depositor, since the term " debt " connotes an obligation enforcible against the decedent as a matter of right and not a bounty. Furthermore, a suit to secure such an account or the book, which is a symbol of its ownership, is not a cause of action to which the decedent could have been a party, since no rights of the " beneficiary " come into being until after the decedent is dead.

It is, accordingly, the conclusion of the court that a cause of action of the variety here under consideration is not within the contemplation of section 127 of the Surrogate's Court Act and, as a matter of law, is not one in respect to which the court possesses the authority to authorize the institution of an action.

Were, however, any link in the foregoing chain of analysis to be deemed defective, with the result that the authorization of the institution of such a suit could be considered permissible in the

discretion of the court, the result must be the same under the facts of this case.

Under the doctrine of *Matter of Totten* (179 N. Y. 112, 125), the opening and continuance of an account in so-called "trust" form creates no more than a presumption that it was the intention of the depositor that the avails of the account should become the property of the beneficiary on the death of the depositor. (*Hemmerich* v. *Union Dime Savings Inst.*, 205 N. Y. 366, 370.) This so-called "presumption" is, however, wholly different in effect from the true presumption of law relating to the survivorship rights resulting from the opening of a joint account in statutory survivorship form (*Moskowitz* v. *Marrow*, 251 N. Y. 380; *Marrow* v. *Moskowitz*, 255 id. 219; *Matter of Porianda*, 256 id. 423), and is, in reality, not properly classifiable as a presumption at all. (*Matter of Callahan*, 142 Misc. 28, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524.) It is a mere inference of fact which, like other inferences, is subject to rebuttal by contrary evidence or stronger inferences. (*Morris* v. *Sheehan*, 234 N. Y. 366, 368; *Matter of Reich*, 146 Misc. 616, 620.) Such controverting demonstration may be made either by a showing that there was no initial intention to confer a benefit upon the nominal *cestui que trust* (*Morris* v. *Sheehan*, *supra*) or that, after the opening of the account with this wish in mind, the sentiments of the depositor on the subject changed. (*Walsh* v. *Emigrant Industrial Savings Bank*, 106 Misc. 628; affd., 192 App. Div. 908; affd., 233 N. Y. 512; *Matter of Beagan*, 112 Misc. 292; *Matter of Richardson*, 134 id. 174; *Matter of Kive*, 139 id. 273.) In the first three of the last cited cases, such alteration of wish was adduced from evidence that the depositor, at the time of making his will, included the avails of the "trust" account in the computation of his assets on which the dispositive directions were based. In *Matter of Schrier* (145 Misc. 593, 597) and in *Moran* v. *Ferchland* (113 id. 1), the latter written by Mr. Justice LAZANSKY, now presiding justice of the Appellate Division of this Department, it was held that the fact that a specific bequest of the avails of such an account had been made by the depositor's will was a sufficient demonstration of contrary intent to rebut the inference of a wish to benefit the nominal *cestui* of the savings bank "trust."

Until, therefore, some will has been admitted to probate in the present estate, or all those which have been filed or may hereafter be presented have been determined to be invalid, it cannot be ascertained whether or not similar rebutting circumstances may not be demonstrable in the present instance. Were the court, therefore, to permit the institution of a suit at the present time

in which the temporary administrator, obviously unfamiliar with the intimate personal affairs of the decedent, would be the sole party defendant, it would be countenancing a potential diversion of assets properly belonging to the estate, since, as a practical matter, facts tending to indicate the revocation of the " tentative trust " might not be ascertained by reason of the ignorance of the temporary administrator concerning them.

The latter condition, at least, would presumably be remedied were the claimant to institute a proceeding in this court under section 206-a of the Surrogate's Court Act, which accords identical relief under appropriate conditions to that available in replevin in the Supreme Court, since here all interested persons may be made parties. Whether or not such a proceeding would be properly maintainable for the enforcement of a demand of the present nature prior to an adjudication respecting the validity of all purported wills, is a question which will be determined if and when presented, but is expressly reserved from present adjudication. Unquestionably the claimant would like to obtain the avails of the account as expeditiously and inexpensively as possible, but this should not be permitted so long as there is a reasonable possibility that those who may have a better right thereto may be prejudiced by a premature litigation on the subject. Nor should undue sympathy be wasted on the claimant at the inevitable delay in obtaining an adjudication of his rights which is the necessary result of the complicated state of the affairs of the decedent. After all, as has been noted, if he has any rights at all, they are no more sacred or worthy of higher consideration than those of a specific legatee of the account, and the latter type of donee could lay no claim to satisfaction until the validity of the will in general and of his gift in particular had been adjudicated.

For the reasons stated, the application for leave to sue the temporary administrator is denied both as a matter of law and as one of discretion, if any such exists.

Enter decree on notice in conformity herewith.